John Houston Scott, SBN 72578
Lizabeth N. de Vries, SBN 227215
**SCOTT LAW FIRM**
1388 Sutter Street, Suite 715
San Francisco, CA 94109
Tel: (415) 561-9601
Fax: (415) 561-9609
E-mail: john@scottlawfirm.net
liza@scottlawfirm.net

Izaak D. Schwaiger, SBN 267888
130 Petaluma Avenue, Suite 1A
Sebastopol, CA 95472
Tel: (707) 595-4414
Fax: (707) 581-1983
E-mail: izaak@izaakschwaiger.com

Attorneys for Plaintiff, DANE ZEEN

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DANE ZEEN<br><br>    Plaintiff,<br>v.<br><br>COUNTY OF SONOMA, STEVE FREITAS, MICHAEL YODER, CHARLES BLOUNT, and DOES 1-20, inclusive.<br><br>    Defendants. | Case No: 3:17-cv-02056-LB<br><br>**PLAINTIFF'S MOTION *IN LIMINE* NO. 1**<br><br>Date:      August 2, 2018<br>Time:      1:00 p.m.<br>Courtroom: C, 15th Floor<br>Judge:     The Honorable Laurel Beeler<br><br>Trial: August 20, 2018 |

**Motion *in limine* No. 1: To Exclude the Testimony of Defendants' Expert Michael Schott**

On June 7, 2018 the parties disclosed experts. The plaintiff disclosed police expert Roger Clark and served his Rule 26 expert report. The defendants disclosed Michael Schott but this disclosure was not accompanied by a Rule 26 report. See Exhibit 1 attached. The disclosure provides: "A complete statement of all opinions the witness will express and the bases and reasons for them, including the facts and/or data considered by the witness in forming them, is attached hereto as Exhibit A." Attached as Exhibit A is Michael Schott's Curriculum Vitae. Plaintiff assumed the defendants were referring to Mr. Schott's declaration as his report.

This disclosure goes on to state that: "The exhibits that may be used to summarize or support those opinions … have been provided previously to plaintiff in the summary judgment proceeding and filed with the Court (Docket Nos. 53-1, 54-3) as Exhibits A through H to the declaration of Michael Schott (Docket 53).

The plaintiff moves to exclude Mr. Schott as an expert witness for the following reasons:

1. Defendants failed to provide a Rule 26 report in the June 7, 2018 disclosure; and/or

2. Should the court allow him to testify as an expert in the absence of a Rule 26 report, and assuming his testimony is consistent with his declaration, his testimony should be excluded because:

   a. The video and audio is usually the best evidence of what happened, however, it has little value when it is dark and subject to different interpretations;

   b. His "expert" opinions seek to usurp the province of the jury to the extent he attempts to interpret what is not clearly observable in the videos and give an opinion as to Deputy Yoder's intent;

   c. His "expert" opinions regarding what happened "in the dark" is speculation and does not meet the *Daubert* test for reliability and trustworthiness; and

   d. His "discussion" at pages 5 to 8 of his declaration is simply argument intended to rebut allegations in the Complaint and the testimony of Timothy LaRose, an eyewitness. To the extent there is admissible evidence, e.g., the video and audio of the event, defense counsel can argue the facts and impeach Mr. LaRose with the video and audio evidence. An expert cannot testify as to the credibility of an eyewitness based on his interpretation of video or audio evidence. This is the exclusive role of the jury.

- 1 -

SCOTT LAW FIRM
1388 SUTTER STREET, SUITE 715
SAN FRANCISCO, CA 94109

The key issue in dispute is whether Deputy Yoder used excessive force in violation of the Fourth Amendment when he caused the plaintiff to be slammed head first to the ground while in his custody and handcuffed.  The plaintiff suffered serious facial injuries.  Although most of the events that occurred before and after the fall are not in genuine dispute, the cause of the injuries has evolved over time.  Deputy Yoder now contends that he slipped and accidentally caused the injuries to Dane Zeen. The plaintiff believes that Deputy Yoder may or may not have "slipped" but, regardless, he knowingly and intentionally slammed Zeen's face to the ground in the process.

The issue in dispute is Deputy Yoder's intent.  Did Deputy Yoder intentionally cause the injuries to Dane Zeen, or were they caused accidentally?  Deputy Yoder could have "slipped" or accidentally fell and still had the intent to cause injuries to Zeen -- they are not mutually exclusive.  The event is not captured on video camera, yet there were four witnesses to the event. Deputy Yoder, Deputy Blount, Timothy LaRose and Dane Zeen.  Dane Zeen has no recollection of what happened.  The testimony of the Deputies conflicts with Mr. LaRose.

It is impossible to see anything clearly on the video during several seconds leading up to the injuries being caused.  Mr. Schott contends that there are no clear images during only the 1.5 seconds prior to the "tandem fall." This is a fact in dispute and subject to argument based on testimony and video evidence – not "expert" opinion. From there Schott claims that there was less than one-second of perception-reaction time in which to evaluate or execute a decision.  Thus, Mr. Schott is giving an "expert" opinion as to Deputy Yoder's intent, the ultimate issue in dispute.

Deputy Yoder can testify he slipped and did not have time to react thus accidentally causing the injuries.  However, an expert cannot vouch for him and speculate as to his acts and omission, and reaction time, based on a subjective interpretation of video evidence that objectively is subject to different interpretations.

Schott also claims the evidence "suggests" that Yoder applied/maintained a left-hand grasp of Zeen at some point prior to and during the fall.  This opinion is also based entirely on his subjective interpretation of what the evidence "suggests."  The video neither supports nor disputes this assumption.

- 2 -

1    It is one thing to enhance or slow down a video.  It is quite another to subjectively interpret

2 what is happening in the dark and providing an opinion as to another's intent.

3    This is speculation and pseudo-science disguised as an expert opinion regarding Deputy

4 Yoder's intent. This does not meet the *Daubert* test for reliability.  In addition, the prejudicial

5 impact of this testimony far outweighs any probative value.  Accordingly, Mr. Schott's opinions

6 should also be excluded under Rule 403.

7

8 Dated:  July 3, 2018                               Respectfully submitted,

9                                                                **SCOTT LAW FIRM**

10

11                                                                By: /s/John Houston Scott_____

12                                                                     John Houston Scott
                                                                     Attorneys for Plaintiff

13

**SCOTT LAW FIRM**
1388 SUTTER STREET, SUITE 715
SAN FRANCISCO, CA 94109

- 3 -

# Exhibit 1

1   Bonnie A. Hamilton, Esq. (SB 180502)
    BLUESTONE ZUNINO & HAMILTON, LLP
2   50 Old Courthouse Square, Suite 401
    Santa Rosa, CA  95404
3   Telephone:    707-526-4250
    Facsimile:    707-526-0347
4   bonnie@bzhlegal.com

5   Attorneys for Defendant Michael Yoder

6

7

8                UNITED STATES DISTRICT COURT

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10  DANE ZEEN,             No.  3:17-cv-02056 LB

11          Plaintiff,
                        **DEFENDANT MICHAEL YODER'S**
12     v.                    **EXPERT DISCLOSURE**

13  COUNTY OF SONOMA, STEVE
    FREITAS, MICHAEL YODER, CHARLES
14  BLOUNT, and DOES 1-20, inclusive,

15

16          Defendants.
    _____/

17

18      Comes now defendant Michael Yoder[1] and hereby submits his expert disclosure of witnesses

19  in this matter.

20     Retained Experts:

21    1.    Michael Schott

22         P.O. Box 387

23         Fort Jones, CA 96032

24      A complete statement of all opinions the witness will express and the bases and reasons for

25  them, including the facts and/or data considered by the witness in forming them, is attached hereto as

26  Exhibit A.  The exhibits that may be used to summarize or support those opinions, the witness's

27  qualifications, including a list of all other cases in which, during the last 5 years, the witness testified

28

---

[1]    Although the clerk has not yet entered judgment in favor of the County of Sonoma, Steve Freitas and Charles
Blount, the claims against these three defendants have all been adjudicated in favor of them and against the plaintiff. (Docket 68)

BLUESTONE
ZUNINO
HAMILTON

NO. 3:17-cv-02056 LB:    EXPERT DISCLOSURE OF DEFENDANT YODER              1

as an expert at trial or by deposition, have all been provided previously to plaintiff in the summary

judgment proceeding and filed with the Court (Docket Nos. 53-1, 54-3) as Exhibits A through H to

the declaration of Michael Schott (Docket 53) The statement of compensation is contained on Exhibit

B hereto.

Non-Retained Experts:

1.     All experts properly and timely disclosed by any other party to this action.

Defendant reserves the right to supplement, augment or amend this expert witness disclosure

as provided in Fed. Rules Civ. Proc. 26 or as otherwise authorized by the Court.

DATED:      June 7, 2018                    BLUESTONE ZUNINO & HAMILTON, LLP

By _____
        Bonnie A. Hamilton
        Attorneys for Defendant Michael Yoder

# EXHIBIT A

**Michael G. Schott**
**Forensic Image Analysis**

PO Box 387
Fort Jones, CA 96032
530.598.5469

michaelschott@
cal.berkeley.edu

## Curriculum Vitae

### Education

B.A. Mathematics 1977, University of California, Berkeley.

Paralegal Certificate 1992, University of San Francisco.

### Employment

1975-1979:  Deputy Sheriff - Contra Costa County (CA) Sheriff's
            Department.

            General law enforcement, patrol, and detention duties.

1979-1984:  Advanced assignments:

            Detectives Bureau – Felony investigations and fugitive apprehension.

            Crime Analysis Unit - Correlation and numerical analysis
            of crime data; tracking serial/habitual offenders; trend analysis.

1984-1992:  Sergeant - Contra Costa Sheriff's Department.

            Patrol Supervisor.

            Detective-Sergeant.

            Assistant Commander SWAT/Hostage Negotiation
            Team.

            Instructor: Critical Incident Management and Officer-Involved
            Fatal Incident Protocol.

   -1992:  Honorably retired.

1992 -     Licensed private investigator and litigation support consultant,
present    specializing in crime analysis, forensic image analysis, and
           production of photographic and multimedia exhibits.

## Professional Law Enforcement Certifications

1976   California Department of Justice - POST Basic Certificate

1977   California Department of Justice - POST Intermediate Certificate

1981   California Department of Justice - POST Advanced Certificate

1987   California Department of Justice - POST Supervisory Certificate

## Teaching/Speaking

FBI Tactical Leadership Conference, Pleasanton, CA – April 1993
*Polar Coordinates as a Tactical Frame of Reference*

Danville (CA) Police Department – February 1997 *Critical Incident Response*

Contra Costa Co. Sheriff's Department – March 1997 *Critical Incident Management for Patrol Supervisors*

CPOF conference, Colorado Springs, CO – June 2000  *Forensic Image Analysis*

California Association of Criminalists, Martinez, CA  – August 2001
*Forensic Image Analysis and Photogrammetry*

Tactical Firearms/Basic SWAT Academy – Adjunct Instructor
Ontario, CA  –  2001  *Kinetic Combat Targets and Night Shooting*

CPOF conference, Reno, NV – June 2001  *Forensic Image Analysis*

PORAC conference, Palm Springs, CA – June 2001  *Forensic Image Analysis*

CCPOA conference, Reno, NV – September 2001  *Forensic Image Analysis*

CPOF conference, Tampa, FL – June 2002  *Forensic Image Analysis*

PORAC conference, Palm Springs, CA – April 2004  *Sub rosa Video*

PORAC symposium, San Diego, CA  – April 2006  *Forensic Image Analysis*

Yreka (CA) Police Department – September 2008 *Forensic Image Analysis and Photogrammetry*

CPOA  conference, Redding, CA -- September 2009 *Forensic Image Analysis and Photogrammetry*

2

### Published Articles

Training for Failure: Why Some Dangerous Habits Begin at the Shooting Range, *The Tactical Edge*, Summer 1998.

Chemical Agents Computations: A Practical Guide to Avoiding Lethal CS Concentrations, *The Tactical Edge*, Summer 1992.

A Tactical Frame of Reference: Polar Coordinates, *The Tactical Edge*, Summer 1991.

### Copyrighted Technical Writing

By Michael G. Schott:
Critical Incident Management for Patrol Supervisors, (October 1989).

By Don Ray:
California - A Public Records Primer & Investigator's Handbook (ISBN 0-9629552-3-X)  Contributions by Michael G. Schott

### Consultant

*Newsweek*  1992

*The Wall Street Journal*  2001

### Broadcast Media

A&E TV *American Justice*:  The Corcoran Eight, (2003)
Forensic photographs and graphics by Michael G. Schott

### Expert Witness Qualifications

Qualification and/or testimony as an expert witness with respect to *criminal investigation* in the California Superior and/or Municipal Courts of Contra Costa, San Francisco, Alameda, and Solano Counties.

Qualification and/or testimony as an expert witness with respect to *forensic image analysis*  in the California Superior and/or Municipal Courts of Alameda, Contra Costa, Los Angeles, San Francisco, San Mateo, Shasta, Solano, Kern, Yolo, and Sutter Counties; in the District Court for the City and County of Denver, Colorado; in the Superior Court of Arizona, County of Maricopa;  in the United States District Court Eastern District of California, United States District Court District of Colorado, United States District Court Eastern District of Washington, and in the United States District Court Northern District of California.

3

My opinions, work product and/or reports have been quoted, cited and/or relied upon by the court(s) in rulings with respect to the following matters:

- <u>Estate of Denny Gonzales, et al. v. City of Antioch, et al.,</u> (2017), United States Court of Appeals for the Ninth Circuit – Affirmation of MSJ ruling.

- <u>Kong Meng Xiong v. City of Merced, et al.,</u> (2016), United States District Court Eastern District of California – Denial of motions re: JMOL and New Trial.

- <u>Estate of Denny Gonzales, et al. v. City of Antioch, et al.,</u> (2015), United States District Court Northern District of California – Motion for Summary Judgment.

- <u>Estate of Kenneth Harding, Jr., et al. v. City and County of San Francisco, et al.,</u> (2015), United States District Court Northern District of California – Motion for Summary Judgment.

- <u>Jerry Newmaker, et al. v. City of Fortuna, et al.,</u> (2013), United States District Court Northern District of California – Motion for Summary Judgment.

- <u>Estate of Charles Hill, et al. v. Bay Area Rapid Transit District, et al.,</u> (2013), United States District Court Northern District of California – Motion for Summary Judgment.

- <u>Estate of Joshua Levy, et al. v. City of Spokane, et al.,</u> (2012), United States District Court Eastern District of Washington – Motion for Summary Judgment.

- <u>Department of Corrections and Rehabilitation v. State Personnel Board,</u> (2008), Court of Appeal of the State of California Third Appellate District.


## Professional Memberships

University of California Alumni Association
University of San Francisco Alumni Association
International Association for Identification (IAI)
National Tactical Officers Association (NTOA) 1991-2007


## Continuing Education

IAI Lectures and Workshops related to forensic image analysis:

| | |
|---|---|
| Basic Rear Projection Photogrammetry Workshop | 2007 |
| Advanced Rear Projection Photogrammetry Workshop | 2007 |
| Advanced Image Processing Techniques Workshop | 2007 |
| Digital Forensics – Recovery of Digital Evidence | 2012 |
| Forensic Image Comparison – Lecture and Workshop | 2012 |

4

| | |
|---|---|
| SWGIT Update: Forensic Best Practices for Imaging and Video (Panel Discussion) | 2012 |
| Adobe Photoshop II  Workshop | 2015 |
| Adobe Photoshop III Workshop | 2015 |

## Summary of Testimony  2012 - 2017

### Court Testimony:

Heaney v. City and County of Denver, et al. (2012), United States District Court District of Colorado.

Wanda Johnson, et al. v. Bay Area Rapid Transit District, et al. (2014), United States District Court Northern District of California.

People v. Danny Jeffreys, et al. (2014), California Superior Court, County of Solano.

USA v. Arshad Razzak, et al. (2015), United States District Court Northern District of California.

People v. Michael Lewelling (2015), California Superior Court, City and County of San Francisco.

People v. Donald R. Hill, Jr. (2015), California Superior Court, County of Solano.

Xiong v. City of Merced, et al. (2015), United States District Court Eastern District of California.

Estate of Anthony A. Banta, et al. v. City of Walnut Creek, et al. (2016), United States District Court Northern District of California.

People v. Timothy James Mitchell, III (2017), California Superior Court, County of Solano.

State of Arizona v. Philip Mitchell Brailsford, (2017), Arizona Superior Court, County of Maricopa.

### Administrative Hearing Testimony:

Bay Area Rapid Transit District arbitration re: *Anthony Pirone* (2013)

City of Tracy arbitration re: *Terry Miller* (2013)

City of Tracy arbitration re: *Timothy Brown* (2014)

5

Alameda Co. Juvenile Probation administrative appeal re: *Harold Carter* (2015)

Alameda Co. Juvenile Probation administrative appeal re: *Trevor Pope* (2015)

Alameda Co. Civil Service Commission administrative appeal re: *Shawn Osborne* (2017)

**Deposition Testimony:**

<u>Newmaker, et al. v. City of Fortuna, et al.</u> (2013), United States District Court Northern District of California.

<u>Thao v. City of Merced, et al.</u> (2014), Merced County Superior Court.

<u>Xiong v. City of Merced, et al.</u> (2015), United States District Court Eastern District of California.

<u>Berbereia et al. v. County of Kings, et al.</u> (2017), United States District Court Eastern District of California.

**EXHIBIT B**

**Michael G. Schott**
Forensic Image Analysis

<u>Fee Schedule</u>   (effective 1/1/2018)

<u>Forensic Imaging:</u>

- Forensic image analysis
- Media conversions
- Still-frame video capture
- Photo and video clarification
- Video slow motion, spotlighting, time and frame counters
- Photogrammetry
- Production of color photo exhibits/prints/enlargements
- Production of custom annotated photo/video trial exhibits
- Case and/or trial preparation meetings and consultation
- Deposition and Trial Testimony

$ 295.00 per hour

<u>Expenses:</u>

- Personal automobile travel
- Air travel, car rental, meals and lodging
- Miscellaneous expenses

$   .50 per mile
Billed at Cost
Billed at Cost

<u>Terms:</u>

- Travel time is billed at half rate plus expenses.

- In addition to travel time, professional services rendered at locales requiring an overnight stay or exceeding 150 miles one way travel are billed at either $1180.00 per 4 hour minimum or $2360.00 per diem up to 8 hours, plus $295.00 per hour thereafter.

- Payment in full is due within 30 days of invoice date.  Further professional services, including consultation, the delivery of reports, exhibits, documents or other work product will not be rendered on past due accounts.  In the event that an account becomes delinquent, (balance due 60 days past invoice date), *full payment of the entire outstanding balance plus a non-refundable advance retainer in the amount of $7,500.00* shall be delivered to Michael G. Schott, PO Box 387, Fort Jones, CA 96032 prior to the commencement of any further professional services.

<u>Engagement in Accordance with Terms:</u>

If you understand and agree to these terms, please sign and date a copy of this document and return it via email or US Mail in order to engage my services in the matter of:

_____

_____        _____        _____
Signature                                       Title                                   Date

## PROOF OF SERVICE

I am employed in Sonoma County, California.  I am over the age of 18 years and not a party to the within action.  My business address is 50 Old Courthouse Square, Suite 401, Santa Rosa, CA 95404.

On **June 7, 2018**, I served the following document(s):

### DEFENDANT MICHAEL YODER'S EXPERT DISCLOSURE

by placing a true copy thereof enclosed is a sealed envelope and/or served in the manner described below and addressed to:

**Attorneys for Plaintiff Dane Zeen:**
John Houston Scott, Esq.
Lizabeth N. de Vries, Esq.
Scott Law Firm
1388 Sutter Street, Suite 715
San Francisco, CA 94109
Tel: (415) 561 -9601
Fax: (415) 561-9609
E-mail:     john@scottlawfirm.net
            liza@scottlawfirm.net

**Attorneys for Plaintiff Dane Zeen:**
Izaak D. Schwaiger, Esq.
130 Petaluma Avenue, Suite 1A
Sebastopol, CA 95472
Tele: (707) 595-4414
Fax: (707) 851-1983
E-mail: izaak@izaakschwaiger.com

XX    **BY U.S. MAIL:**  I caused such envelope to be deposited in the mail by placing the envelope for collection and mailing following our ordinary business practices. I am readily familiar with this business' practice for collecting and processing correspondence for mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully prepaid.  The name and address of each person/firm to whom I mailed the documents is listed above.

___    **BY HAND DELIVERY:** I cau sed such envelope to be delivered by hand to the addressee(s) designated above.

___    **BY OVERNIGHT COURIER SERVICE:** I caused such envelope to be delivered via overnight courier services to the addressee(s) designated above.

___    **BY E-MAIL:** I transmitted electronically the listed documents(s) to the e-mail address(es) set forth on the attached list.

XX    **FEDERAL:** I declare that I am employed in the office of a member of the bar of this court at whose direct this service was made.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on **June 7, 2018**, at Santa Rosa, California.

Tracy Kecskemeti

**PROOF OF SERVICE**

### CERTIFICATE OF SERVICE

**(*Dane Zeen v. County of Sonoma, et al.*, Case No. 3:17-cv-02056-LB)**

I, Sherry Alhawwash, declare as follows:

I am a citizen of the United States, over the age of eighteen years and not a party to the within entitled action.  My business address is 1388 Sutter Street, Suite 715, San Francisco, California 94109.  On July 3, 2018 I served the attached:

**PLAINTIFF'S MOTION *IN LIMINE* NO. 1**

on the interested party(ies) named below:

> Bonnie A. Hamilton
> Marshall Bluestone
> Bluestone Zunino & Hamilton, LLP
> 50 Old Courthouse Square, Suite 401
> Santa Rosa, CA  95402-3729
> E-mail: bonnie@bzhlegal.com;
> marshall@bzhlegal.com

I served the attached document(s) in the manner indicated below:

☒  **BY MAIL:**  I caused true and correct copy(ies) of the above documents to be placed and sealed in envelope(s) addressed to the addressee(s) named above and, following ordinary business practices, placed said envelope(s) at 1388 Sutter Street, Suite 715, San Francisco, CA 94109, for collection and mailing with the United States Postal Service and there is delivery by the United States Post Office at said address(es).  In the ordinary course of business, correspondence placed for collection on a particular day is deposited with the United States Postal Service that same day.

☒  **BY E-MAIL**:  I caused a copy(ies) of such document(s) to be transmitted via e-mail.  The e-mail to which the document(s) were transmitted is listed above.  The e-mail transmission was reported as complete and without error.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed July 3, 2018 at San Francisco, California.

Sherry Alhawwash

1   Bonnie A. Hamilton, Esq. (SB 180502)
    BLUESTONE ZUNINO & HAMILTON, LLP
2   50 Old Courthouse Square, Suite 401
    Santa Rosa, CA  95404
3   Telephone:    707-526-4250
    Facsimile:     707-526-0347
4   bonnie@bzhlegal.com

5   Attorneys for Defendant Michael Yoder

6

7

8                 UNITED STATES DISTRICT COURT

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10  DANE ZEEN,                          No.  3:17-cv-02056 LB

11                  Plaintiff,

12         v.                           DEFENDANT YODER'S OPPOSITION TO
                                        PLAINTIFF'S MOTION IN LIMINE NO. 1
13  COUNTY OF SONOMA, STEVE             TO EXCLUDE THE TESTIMONY OF
    FREITAS, MICHAEL YODER, CHARLES     DEFENDANT'S EXPERT MICHAEL
14  BLOUNT, and DOES 1-20, inclusive,   SCHOTT

15                                      Pretrial Date:  August 2, 2018
                    Defendants.         Time:           1:00 p.m.
16                                      Ctrm:           C, 15th Floor
    _____/   Trial:          August 20, 2018

17

18         Defendant respectfully submits this opposition to plaintiff's motion in limine no. 1 which

19  seeks exclusion of defendant's expert, Michael Schott, from testifying at trial.

20                      **FACTUAL BACKGROUND**

21         On April 12, 2018, defendant filed and served a motion for summary judgment [Docket 51].

22  One of the supporting declarations was that of Michael Schott. [Docket 53] Included with the

23  declaration were exhibits both filed and lodged with the court. [*Id.*]

24         On June 3, 2018, defendant served its expert disclosure. [Freeman decl Ex A] Erroneously,

25  defendant attached the CV as opposed to the report, as Exhibit A to that disclosure. [*Id.*] The mistake

26  was not brought to defendant's attention until the present motion in limine was served. [*Id.*, Ex B]

27  The report is materially identical to the declaration that was filed in support of the motion for

28  summary judgment.  The report was provided to plaintiff on the next working day after the issue was

BLUESTONE
ZUNINO
HAMILTON

1    brought up in the motion for summary judgment; the intervening day was a holiday. [*Id.*]

2    Once the report was provided, plaintiff did not respond to defendant's inquiry as to whether

3    the motion in limine would be withdrawn based on the mistake.  Defendant has provided the report,

4    the declaration, and will seek leave of court if necessary (assuming plaintiff does not respond to

5    defendant's meet and confer inquiry) to amend the disclosure and/or to limit the expert's testimony to

6    those matters contained in the declaration submitted in support of the motion for summary judgment.

7    Although plaintiff's motion in limine is not supported by any cited authority, defendant will

8    respond to the issues raised in the motion.

9    **LEGAL ARGUMENT**

10   **A.      Defendant's Error in Attaching the Wrong Exhibit to the Disclosure Could have been
              Easily Remedied with a Telephone Call.**

11

12   Rather than alert the defendant's counsel that the attachment to the disclosure was not, as

13   described in the disclosure, the summary report, plaintiff chose to say nothing (even when on a meet

14   and confer call about the pretrial submissions just a couple of hours before plaintiff served the motion

15   in limine).  Defendant's counsel was completely in the dark about the error until the motion was

16   received. Plaintiff does not claim any prejudice from the error, and it's hard to guess what prejudice

17   there could be when the report was: (1) provided the next business day; and (2) is substantially the

18   same as the declaration of Mr. Schott.

19   Federal Rule of Civil Procedure 37(c)(1) provides that if a party fails to provide information

20   or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information

21   or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was

22   substantially justified or is harmless.  The mistaken attachment to the expert disclosure may not be

23   deemed "justified." Indeed, defendant's counsel would be hard-pressed to suggest such negligence is

24   "justified".  However, it was a mistake and the belated disclosure of the actual report (attaching

25   instead the CV by accident) was harmless, as the substance of the report was available to plaintiff as

26   early as April 12, 2018, when defendants filed Schott's declaration in support of defendants' motions

27   for summary judgment. *Tuna Processors, Inc. v. Haw. Int'l Seafood, Inc.*, No. Civ. 05-517 BMK,

28   2007 WL 433547, *2 (D.Haw. Feb.5, 2007) ("The failure to properly disclose is harmless where there

is no prejudice to the opposing party. There is generally no prejudice where the untimely evidence does not raise any new issues in the case." Plaintiff has had the opportunity to depose plaintiff's expert since the declaration was filed in April and up through July 12, 2018, the expert discovery cut-off period, but has not sought to do so. By filing the motion, plaintiff intimates that the mistaken failure to disclose the report caused harm, but has not actually stated in what way he was harmed.

It is requested that the motion in limine, insofar as it is based on Rule 26 without any further legal argument, be denied.

**B.     The Remainder of Motion in Limine No. 1 is Without Sufficient Legal or Factual Analysis to Be Ruled Upon.**

The remainder of plaintiff's motion should be denied as unsupported by analysis or legal support. Without any analysis, plaintiff asserts that Mr. Schott's opinion attempts to "give an opinion about Deputy Yoder's intent". First, nowhere in Mr. Schott's declaration does he opine about Deputy Yoder's intent and, indeed, plaintiff does not cite the reference to this opinion. Mr. Schott did not even review the testimony of the deputies in conducting his forensic review of the body cam videos.

Second, the bulk of plaintiff's interpretation of Schott's opinions (candidly admitted by plaintiff in the remainder of the motion to be contained in the Schott declaration), would go to the weight of the evidence, not the admissibility of the evidence. The Ninth Circuit has held that the admissibility of expert opinion testimony generally turns on the following preliminary legal determinations by the trial judge:

• Whether the opinion is based on scientific, technical, or other specialized knowledge;

• Whether the expert's opinion would assist the trier of fact in understanding the evidence or determining a fact in issue;

• Whether the expert has appropriate qualifications-i.e., some special knowledge, skill, experience, training or education on that subject matter;

• Whether the testimony is relevant and reliable;

• Whether the methodology or technique the expert uses "fits" the conclusions (the expert's credibility is for the jury);

• Whether its probative value is substantially outweighed by the risk of unfair prejudice,

1  confusion of issues, or undue consumption of time.

2  *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir.2000) (citations omitted). The Hankey court

3  explained that "not only must the trial court be given broad discretion to decide whether to admit

4  expert testimony, it 'must have the same kind of latitude in deciding how to test an expert's

5  reliability.' " Id. (emphasis in original) (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137

6  (1999)). Mr. Schott's credentials in the area of video forensics are unassailable and indeed, are not

7  questioned in the motion. *Plaintiff's* inability to interpret the forensic videos is not properly the basis

8  for exclusion. Forensics of body cam videos are properly (and routinely) the subject of expert

9  testimony at trial where, as here, the lighting on the images makes the review by the unaided eye

10  difficult.

11       Each of the factors supports Schott's testimony.  The testimony will obviously assist the trier

12  of fact, given plaintiff's claim that the videos do not show anything useful.  The testimony is

13  predicated on specialized knowledge, experience and training that plaintiff does not question in the

14  motion. The methodology supports the opinions stated, and again, is not questioned in the motion.

15  The analysis is probative and not prejudicial; plaintiff is able to cross-examine Schott if the

16  methodology is ultimately questioned at trial.

17  **C.      At a Minimum, a *Daubert* Hearing Should be Permitted.**

18       Plaintiff did not raise any objection whatever to the admissibility of Schott's opinions at the

19  summary judgment stage, nor at the hearing. Plaintiff can argue in closing (and address in cross

20  examination) about what the Schott exhibits do, or do not, actually show. Plaintiff states, without

21  analysis, in the second to last line in the motion that "the prejudicial impact of this testimony far

22  outweighs any probative value."  But unlike plaintiff's expert who actually is being offered to testify

23  that the event was "clearly one of excessive and malicious" force (which actually is prejudicial and

24  improper), Schott's opinions do not attempt to invade the province of the jury at all, and actually are

25  predicated only on the evidence in the body cam videos, both audibly and visually.  If the Court is

26  inclined, the defendant would be amenable to a hearing outside the presence of the jury if need be, but

27  the motion in limine actually does not warrant such a step.

28  ///

BIUESTONE
ZUNINO
HAMILTON

1       Based on the foregoing, it is respectfully requested that plaintiff's motion in limine no. 1 be

2  denied.

3  DATED:      July 10, 2018           BLUESTONE ZUNINO & HAMILTON, LLP

4

5                       By _____

                           Bonnie A. Hamilton

6                         Attorneys for Defendant Michael Yoder

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**

I am employed in Sonoma County, California.  I am over the age of 18 years and not a party to the within action.  My business address is 50 Old Courthouse Square, Suite 401, Santa Rosa, CA 95404.

On **July 10, 2018**, I served the following document(s):

DEFENDANT YODER'S OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE NO. 1 TO EXCLUDE THE TESTIMONY OF DEFENDANT'S EXPERT MICHAEL SCHOTT

by placing a true copy thereof enclosed is a sealed envelope and/or served in the manner described below and addressed to:

| **Attorneys for Plaintiff Dane Zeen:** | **Attorneys for Plaintiff Dane Zeen:** |
|---|---|
| John Houston Scott, Esq. | Izaak D. Schwaiger, Esq. |
| Lizabeth N. de Vries, Esq. | 130 Petaluma Avenue, Suite 1A |
| Scott Law Firm | Sebastopol, CA 95472 |
| 1388 Sutter Street, Suite 715 | Tele: (707) 595-4414 |
| San Francisco, CA 94109 | Fax: (707) 851-1983 |
| Tel: (415) 561 -9601 | E-mail: izaak@izaakschwaiger.com |
| Fax: (415) 561-9609 | |
| E-mail:      john@scottlawfirm.net | |
|                    liza@scottlawfirm.net | |

XX    **BY U.S. MAIL:** I caused such envelope to be deposited in the mail by placing the envelope for collection and mailing following our ordinary business practices.  I am readily familiar with this business' practice for collecting and processing correspondence for mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully prepaid.  The name and address of each person/firm to whom I mailed the documents is listed above.

\_\_\_    **BY HAND DELIVERY:**  I cau sed such envelope to be delivered by hand to the addressee(s) designated above.

\_\_\_    **BY OVERNIGHT COURIER SERVICE:**  I caused such envelope to be delivered via overnight courier services to the addressee(s) designated above.

XX    **BY E-MAIL:** I transmitted electronically the listed documents(s) to the e-mail address(es) set forth on the attached list.

XX    **FEDERAL:** I declare that I am employed in the office of a member of the bar of this court at whose direct this service was made.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on **July 10, 2018**, at Santa Rosa, California.

_____
Tracy Kecskemeti

**PROOF OF SERVICE**

1   Bonnie A. Hamilton, Esq. (SB 180502)
    BLUESTONE ZUNINO & HAMILTON, LLP
2   50 Old Courthouse Square, Suite 401
    Santa Rosa, CA 95404
3   Telephone:   707-526-4250
    Facsimile:   707-526-0347
4   bonnie@bzhlegal.com

5   Attorneys for Defendant Michael Yoder

6

7

8                   UNITED STATES DISTRICT COURT

9              FOR THE NORTHERN DISTRICT OF CALIFORNIA

10  DANE ZEEN,                          No. 3:17-cv-02056 LB

11               Plaintiff,             DECLARATION OF BONNIE A.
                                        HAMILTON IN OPPOSITION TO
12       v.                             PLAINTIFF'S MOTION IN LIMINE NO. 1
                                        TO EXCLUDE THE TESTIMONY OF
13  COUNTY OF SONOMA, STEVE             DEFENDANT'S EXPERT MICHAEL
    FREITAS, MICHAEL YODER, CHARLES     SCHOTT
14  BLOUNT, and DOES 1-20, inclusive,
                                        Pretrial Date:  August 2, 2018
15                                      Time:           1:00 p.m.
                 Defendants.            Ctrm:           C, 15th Floor
16  _____/  Trial:        August 20, 2018

17

18       I, Bonnie A. Hamilton, declare:

19       1.      I am an attorney duly licensed to practice in the State of California and admitted to this

20  Court, and counsel of record for Defendant Michael Yoder. I have personal knowledge of the

21  following and am competent to testify to the truth thereof.

22       2.      On July 3, 2018, I participated in a meet and confer telephone conference with

23  plaintiff's counsel, John Scott and Izaak Schwaiger which ended at approximately 2:40 p.m. We

24  discussed specifically motions in limine, and Mr. Scott stated that at that time, the plaintiff did not

25  intend on filing any motions in limine. On July 3, 2018, at 4:18, plaintiff served a courtesy copy (via

26  email) of the motion in limine to my email.

27       3.      On June 7, 2018, my office caused to be served an Expert Disclosure, which stated

28  that the "complete statement of all opinions" was attached as Exhibit A. Unfortunately, the exhibit

BLUESTONE
ZUNINO
HAMILTON

1   attached was the CV of the retained expert, not the report. I was not informed of this mistake until I

2   read the Motion in Limine No 1. Ultimately it was my error, not plaintiff's counsel or anyone else's,

3   that the wrong exhibit was attached to the disclosure. However, it is my experience that opposing

4   counsel would call or otherwise alert counsel to such an error in an informal fashion, but that did not

5   occur here.

6        4.       Since the opinions in the report are in substance identical to those in the declaration

7   that was filed in support of Defendants' Motion for Summary Judgement in April (Docket 51, 53)

8   (that is, there are no opinions being offered by Mr. Schott in the report that were not contained in the

9   summary judgment declaration), plaintiff has had all of the opinions of Mr. Schott for nearly three

10  months. The exhibits supporting the declaration were all identified in the disclosure as being the same

11  exhibits as provided with the summary judgment motion, and do not appear to be challenged in any

12  way by the plaintiff in this Motion in Limine No. 1. I provided the report and the declaration to

13  plaintiff on the next business day, July 5, 2018. I've not heard anything further from plaintiff on this

14  issue. Attached hereto is a copy of the email communication and the two attachments (the Schott

15  declaration and the Schott report of the same date).

16       I declare under penalty of perjury under the laws of the United States that the foregoing is true

17  and correct. Executed this 10th day of July, 2018, at Santa Rosa, California.

18

19                                     _Bruce Hamilton_____

20                                     Bonnie A. Hamilton

HUESTONE
CUNINO
HAMILTON

# EXHIBIT A

1  Bonnie A. Hamilton, Esq. (SB 180502)
   BLUESTONE ZUNINO & HAMILTON, LLP
2  50 Old Courthouse Square, Suite 401
   Santa Rosa, CA  95404
3  Telephone:    707-526-4250
   Facsimile:    707-526-0347
4  bonnie@bzhlegal.com

5  Attorneys for Defendant Michael Yoder

6

7

8                    UNITED STATES DISTRICT COURT

9            FOR THE NORTHERN DISTRICT OF CALIFORNIA

10 DANE ZEEN,                         No.  3:17-cv-02056 LB

11            Plaintiff,
                                      **DEFENDANT MICHAEL YODER'S**
12     v.                             **EXPERT DISCLOSURE**

13 COUNTY OF SONOMA, STEVE
   FREITAS, MICHAEL YODER, CHARLES
14 BLOUNT, and DOES 1-20, inclusive,

15
              Defendants.
16 _____/

17
       Comes now defendant Michael Yoder[1] and hereby submits his expert disclosure of witnesses
18
   in this matter.
19
       Retained Experts:
20
       1.    Michael Schott
21
             P.O. Box 387
22
             Fort Jones, CA 96032
23
       A complete statement of all opinions the witness will express and the bases and reasons for
24
   them, including the facts and/or data considered by the witness in forming them, is attached hereto as
25
   Exhibit A.  The exhibits that may be used to summarize or support those opinions, the witness's
26
   qualifications, including a list of all other cases in which, during the last 5 years, the witness testified
27

28
   _____
   [1]    Although the clerk has not yet entered judgment in favor of the County of Sonoma, Steve Freitas and Charles
   Blount, the claims against these three defendants have all been adjudicated in favor of them and against the plaintiff.  (Docket 68)

BLUESTONE
ZUNINO
HAMILTON

NO. 3:17-cv-02056 LB:    EXPERT DISCLOSURE OF DEFENDANT YODER                          1

as an expert at trial or by deposition, have all been provided previously to plaintiff in the summary judgment proceeding and filed with the Court (Docket Nos. 53-1, 54-3) as Exhibits A through H to the declaration of Michael Schott (Docket 53) The statement of compensation is contained on Exhibit B hereto.

<u>Non-Retained Experts:</u>

1.    All experts properly and timely disclosed by any other party to this action.

Defendant reserves the right to supplement, augment or amend this expert witness disclosure as provided in Fed. Rules Civ. Proc. 26 or as otherwise authorized by the Court.


DATED:        June 7, 2018                          BLUESTONE ZUNINO & HAMILTON, LLP

By _____

Bonnie A. Hamilton
Attorneys for Defendant Michael Yoder

# EXHIBIT A

**Michael G. Schott**
**Forensic Image Analysis**

PO Box 387
Fort Jones, CA 96032
530.598.5469

michaelschott@
cal.berkeley.edu

## Curriculum Vitae

### Education

B.A. Mathematics 1977, University of California, Berkeley.

Paralegal Certificate 1992, University of San Francisco.

### Employment

1975-1979:   Deputy Sheriff - Contra Costa County (CA) Sheriff's
Department.

General law enforcement, patrol, and detention duties.

1979-1984:   Advanced assignments:

Detectives Bureau - Felony investigations and fugitive apprehension.

Crime Analysis Unit - Correlation and numerical analysis
of crime data; tracking serial/habitual offenders; trend analysis.

1984-1992:   Sergeant - Contra Costa Sheriff's Department.

Patrol Supervisor.

Detective-Sergeant.

Assistant Commander SWAT/Hostage Negotiation
Team.

Instructor: Critical Incident Management and Officer-Involved
Fatal Incident Protocol.

-1992:   Honorably retired.

1992 -
present   Licensed private investigator and litigation support consultant,
specializing in crime analysis, forensic image analysis, and
production of photographic and multimedia exhibits.

## Professional Law Enforcement Certifications

1976   California Department of Justice - POST Basic Certificate

1977   California Department of Justice - POST Intermediate Certificate

1981   California Department of Justice - POST Advanced Certificate

1987   California Department of Justice - POST Supervisory Certificate

## Teaching/Speaking

FBI Tactical Leadership Conference, Pleasanton, CA – April 1993
*Polar Coordinates as a Tactical Frame of Reference*

Danville (CA) Police Department – February 1997 *Critical Incident Response*

Contra Costa Co. Sheriff's Department – March 1997 *Critical Incident Management for Patrol Supervisors*

CPOF conference, Colorado Springs, CO – June 2000  *Forensic Image Analysis*

California Association of Criminalists, Martinez, CA -- August 2001
*Forensic Image Analysis and Photogrammetry*

Tactical Firearms/Basic SWAT Academy – Adjunct Instructor
Ontario, CA  --  2001  *Kinetic Combat Targets and Night Shooting*

CPOF conference, Reno, NV – June 2001  *Forensic Image Analysis*

PORAC conference, Palm Springs, CA – June 2001  *Forensic Image Analysis*

CCPOA conference, Reno, NV – September 2001  *Forensic Image Analysis*

CPOF conference, Tampa, FL – June 2002  *Forensic Image Analysis*

PORAC conference, Palm Springs, CA – April 2004  *Sub rosa Video*

PORAC symposium, San Diego, CA  – April 2006  *Forensic Image Analysis*

Yreka (CA) Police Department – September 2008 *Forensic Image Analysis and Photogrammetry*

CPOA  conference, Redding, CA -- September 2009 *Forensic Image Analysis and Photogrammetry*

2

### Published Articles

Training for Failure: Why Some Dangerous Habits Begin at the Shooting Range, *The Tactical Edge*, Summer 1998.

Chemical Agents Computations: A Practical Guide to Avoiding Lethal CS Concentrations, *The Tactical Edge*, Summer 1992.

A Tactical Frame of Reference: Polar Coordinates, *The Tactical Edge*, Summer 1991.

### Copyrighted Technical Writing

By Michael G. Schott:
Critical Incident Management for Patrol Supervisors, (October 1989).

By Don Ray:
California - A Public Records Primer & Investigator's Handbook (ISBN 0-9629552-3-X)  Contributions by Michael G. Schott

### Consultant

*Newsweek* 1992

*The Wall Street Journal* 2001

### Broadcast Media

A&E TV *American Justice:* The Corcoran Eight, (2003)
Forensic photographs and graphics by Michael G. Schott

### Expert Witness Qualifications

Qualification and/or testimony as an expert witness with respect to *criminal investigation* in the California Superior and/or Municipal Courts of Contra Costa, San Francisco, Alameda, and Solano Counties.

Qualification and/or testimony as an expert witness with respect to *forensic image analysis* in the California Superior and/or Municipal Courts of Alameda, Contra Costa, Los Angeles, San Francisco, San Mateo, Shasta, Solano, Kern, Yolo, and Sutter Counties; in the District Court for the City and County of Denver, Colorado; in the Superior Court of Arizona, County of Maricopa;  in the United States District Court Eastern District of California, United States District Court District of Colorado, United States District Court Eastern District of Washington, and in the United States District Court Northern District of California.

3

My opinions, work product and/or reports have been quoted, cited and/or relied upon by the court(s) in rulings with respect to the following matters:

- Estate of Denny Gonzales, et al. v. City of Antioch, et al., (2017), United States Court of Appeals for the Ninth Circuit – Affirmation of MSJ ruling.

- Kong Meng Xiong v. City of Merced, et al., (2016), United States District Court Eastern District of California – Denial of motions re: JMOL and New Trial.

- Estate of Denny Gonzales, et al. v. City of Antioch, et al., (2015), United States District Court Northern District of California – Motion for Summary Judgment.

- Estate of Kenneth Harding, Jr., et al. v. City and County of San Francisco, et al., (2015), United States District Court Northern District of California – Motion for Summary Judgment.

- Jerry Newmaker, et al. v. City of Fortuna, et al., (2013), United States District Court Northern District of California – Motion for Summary Judgment.

- Estate of Charles Hill, et al. v. Bay Area Rapid Transit District, et al., (2013), United States District Court Northern District of California – Motion for Summary Judgment.

- Estate of Joshua Levy, et al. v. City of Spokane, et al., (2012), United States District Court Eastern District of Washington – Motion for Summary Judgment.

- Department of Corrections and Rehabilitation v. State Personnel Board, (2008), Court of Appeal of the State of California Third Appellate District.

## Professional Memberships

University of California Alumni Association
University of San Francisco Alumni Association
International Association for Identification (IAI)
National Tactical Officers Association (NTOA) 1991-2007

## Continuing Education

IAI Lectures and Workshops related to forensic image analysis:

| | |
|---|---|
| Basic Rear Projection Photogrammetry Workshop | 2007 |
| Advanced Rear Projection Photogrammetry Workshop | 2007 |
| Advanced Image Processing Techniques Workshop | 2007 |
| | |
| Digital Forensics – Recovery of Digital Evidence | 2012 |
| Forensic Image Comparison – Lecture and Workshop | 2012 |

4

| | |
|---|---|
| SWGIT Update: Forensic Best Practices for Imaging and Video (Panel Discussion) | 2012 |
| Adobe Photoshop II  Workshop | 2015 |
| Adobe Photoshop III Workshop | 2015 |

## Summary of Testimony  2012 - 2017

### Court Testimony:

Heaney v. City and County of Denver, et al. (2012), United States District Court District of Colorado.

Wanda Johnson, et al. v. Bay Area Rapid Transit District, et al. (2014), United States District Court Northern District of California.

People v. Danny Jeffreys, et al. (2014), California Superior Court, County of Solano.

USA v. Arshad Razzak, et al. (2015), United States District Court Northern District of California.

People v. Michael Lewelling (2015), California Superior Court, City and County of San Francisco.

People v. Donald R. Hill, Jr. (2015), California Superior Court, County of Solano.

Xiong v. City of Merced, et al. (2015), United States District Court Eastern District of California.

Estate of Anthony A. Banta, et al. v. City of Walnut Creek, et al. (2016), United States District Court Northern District of California.

People v. Timothy James Mitchell, III (2017), California Superior Court, County of Solano.

State of Arizona v. Philip Mitchell Brailsford, (2017), Arizona Superior Court, County of Maricopa.

### Administrative Hearing Testimony:

Bay Area Rapid Transit District arbitration *re: Anthony Pirone* (2013)

City of Tracy arbitration re: *Terry Miller* (2013)

City of Tracy arbitration re: *Timothy Brown*  (2014)

5

Alameda Co. Juvenile Probation administrative appeal re: *Harold Carter* (2015)

Alameda Co. Juvenile Probation administrative appeal re: *Trevor Pope* (2015)

Alameda Co. Civil Service Commission administrative appeal re: *Shawn Osborne* (2017)

**Deposition Testimony:**

Newmaker, et al. v. City of Fortuna, et al. (2013), United States District Court Northern District of California.

Thao v. City of Merced, et al. (2014), Merced County Superior Court.

Xiong v. City of Merced, et al. (2015), United States District Court Eastern District of California.

Berbereia et al. v. County of Kings, et al. (2017), United States District Court Eastern District of California.

# EXHIBIT B

## Michael G. Schott
**Forensic Image Analysis**

**Fee Schedule**   (effective 1/1/2018)

Forensic Imaging:

- Forensic image analysis
- Media conversions
- Still-frame video capture
- Photo and video clarification
- Video slow motion, spotlighting, time and frame counters
- Photogrammetry
- Production of color photo exhibits/prints/enlargements
- Production of custom annotated photo/video trial exhibits
- Case and/or trial preparation meetings and consultation
- Deposition and Trial Testimony

$ 295.00 per hour

Expenses:

- Personal automobile travel
- Air travel, car rental, meals and lodging
- Miscellaneous expenses

$   .50 per mile
Billed at Cost
Billed at Cost

Terms:

- Travel time is billed at half rate plus expenses.

- In addition to travel time, professional services rendered at locales requiring an overnight stay or exceeding 150 miles one way travel are billed at either $1180.00 per 4 hour minimum or $2360.00 per diem up to 8 hours, plus $295.00 per hour thereafter.

- Payment in full is due within 30 days of invoice date.  Further professional services, including consultation, the delivery of reports, exhibits, documents or other work product will not be rendered on past due accounts.  In the event that an account becomes delinquent, (balance due 60 days past invoice date), *full payment of the entire outstanding balance plus a non-refundable advance retainer in the amount of $7,500.00* shall be delivered to Michael G. Schott, PO Box 387, Fort Jones, CA 96032 prior to the commencement of any further professional services.

**Engagement in Accordance with Terms:**

If you understand and agree to these terms, please sign and date a copy of this document and return it via email or US Mail in order to engage my services in the matter of:

_____

_____       _____       _____
Signature                                  Title                                      Date

**PROOF OF SERVICE**

I am employed in Sonoma County, California. I am over the age of 18 years and not a party to the within action. My business address is 50 Old Courthouse Square, Suite 401, Santa Rosa, CA 95404.

On **June 7, 2018**, I served the following document(s):

**DEFENDANT MICHAEL YODER'S EXPERT DISCLOSURE**

by placing a true copy thereof enclosed is a sealed envelope and/or served in the manner described below and addressed to:

| | |
|---|---|
| **Attorneys for Plaintiff Dane Zeen:** | **Attorneys for Plaintiff Dane Zeen:** |
| John Houston Scott, Esq. | Izaak D. Schwaiger, Esq. |
| Lizabeth N. de Vries, Esq. | 130 Petaluma Avenue, Suite 1A |
| Scott Law Firm | Sebastopol, CA 95472 |
| 1388 Sutter Street, Suite 715 | Tele: (707) 595-4414 |
| San Francisco, CA 94109 | Fax: (707) 851-1983 |
| Tel: (415) 561 -9601 | E-mail: izaak@izaakschwaiger.com |
| Fax: (415) 561-9609 | |
| E-mail:     john@scottlawfirm.net | |
|                  liza@scottlawfirm.net | |

XX     **BY U.S. MAIL:** I caused such envelope to be deposited in the mail by placing the
         envelope for collection and mailing following our ordinary business practices. I am
         readily familiar with this business' practice for collecting and processing correspondence
         for mailing. On the same day that correspondence is placed for collection and mailing, it
         is deposited in the ordinary course of business with the United States Postal Service in a
         sealed envelope with postage fully prepaid. The name and address of each person/firm to
         whom I mailed the documents is listed above.

___     **BY HAND DELIVERY:** I cau sed such envelope to be delivered by hand to the
         addressee(s) designated above.

___     **BY OVERNIGHT COURIER SERVICE:** I caused such envelope to be delivered via
         overnight courier services to the addressee(s) designated above.

___     **BY E-MAIL:** I transmitted electronically the listed documents(s) to the e-mail
         address(es) set forth on the attached list.

XX     **FEDERAL:** I declare that I am employed in the office of a member of the bar of this
         court at whose direct this service was made.

         I declare under penalty of perjury under the laws of the United States of America that the
foregoing is true and correct. Executed on **June 7, 2018**, at Santa Rosa, California.

                                    Tracy Kecskemeti

**PROOF OF SERVICE**

# EXHIBIT B

**Bonnie Freeman**

| | |
|---|---|
| **From:** | Bonnie Freeman |
| **Sent:** | Thursday, July 05, 2018 3:24 PM |
| **To:** | 'Izaak Schwaiger' |
| **Cc:** | John H. Scott; Tracy Kecskemeti |
| **Subject:** | RE: Dane Zeen v. County of Sonoma, et al., Case No. 3:17-cv-02056-LB |
| **Attachments:** | 2018 04-18 Decl of Michael G Schott ISO Motion for Summary Judgment.pdf; Schott Summary Report 4-12-2018.pdf |

Dear Izaak,

The declaration is the report, it's just in declaration form. We just attached the wrong exhibit A to the disclosure. The declaration is attached here for your review. The report says the same thing, and is attached here. I'll amend the disclosure if need be, and/or seek court permission to do so.

Now that you've (finally) informed me that you simply will not agree to copy my staff on electronic emails despite my request, I will stop asking you to do so.

I'm amenable to scheduling Mr. Clark's deposition when all are available, of course.

You told me in our meet and confer conference that you were not filing any motions in limine; that was not the case. I frankly did not even think of expert depos while we had our meet and confer, because it never came up. Now I can see why it did not...

I'll oppose the motion, given your response. Thanks Izaak. –Bonnie

**From:** Izaak Schwaiger [mailto:izaak@izaakschwaiger.com]
**Sent:** Thursday, July 05, 2018 1:24 PM
**To:** Bonnie Freeman
**Cc:** John H. Scott
**Subject:** Re: Dane Zeen v. County of Sonoma, et al., Case No. 3:17-cv-02056-LB

Hi, Bonnie.

Perhaps you could help me locate what you are referring to. I have reviewed Mr. Schott's declaration from your MSJ and the accompanying exhibits A-H, and I don't see any Rule 26 report. Have I missed it? Or is it somewhere else? I apologize if I have overlooked something.

Also, I received your notice today (July 5) for Mr. Clark's deposition (July 12). Since you waited until the last minute to notice this depo and did not communicate with us regarding your intent to take the deposition or the date you selected for it, I cannot guarantee Mr. Clark's availability at this time. I will let you know as soon as we hear from him.

You also requested transcripts of all of Mr. Clark's prior deposition testimony. Mr. Clark has been giving testimony as a retained expert since 1993. In the Rule 26 report that Plaintiff provided, Mr. Clark identified the last four year's worth of testimony which was somewhere in the neighborhood of 280 cases. I'm not sure if your request was a mistake, or if you actually want Mr. Clark to produce what is likely thousands of volumes of transcripts, and if so, whether you intend him to satisfy this request by the date of his deposition, which is seven days from now. I welcome any clarification you can provide.

I understand your position regarding the defense's failure to produce a Rule 26 report, and that it was merely a mistake which have been resolved with a phone call, but candidly it is very challenging for me to guess what

your intentions are, especially given the poor communication we have been having. By way of example, we spoke on the phone at length on July 2, the day you mailed your notice of deposition, and you made no mention of the deposition to us at all.

Lastly, I know you have requested that I CC your office staff on these emails. On matters of routine, I will try to accommodate that request, but Plaintiff's counsel cannot be responsible for communication within your office - only to you. On matters such as these, which unfortunately by their nature may be more adversarial than congenial, I will not CC anyone but the attorneys. Should you choose to share them with anyone else, that is entirely your choice.

Izaak

On Wed, Jul 4, 2018 at 9:08 AM, Bonnie Freeman <bhamilton@bzhlegal.com> wrote:
Thank you. Izaak, clearly there was a mistake on the attachment to the expert disclosure, which a phone call would have resolved. The report was already provided in the summary judgment motion, it is unchanged and titled as such, so let me know if I need to oppose your motion. The report was disclosed early.

Sent from my Verizon, Samsung Galaxy smartphone

-------- Original message --------
From: Sherry Alhawwash <Sherry@scottlawfirm.net>
Date: 7/3/18 4:31 PM (GMT-08:00)
To: Bonnie Freeman <bhamilton@bzhlegal.com>
Cc: "John H. Scott" <John@scottlawfirm.net>, Izaak Schwaiger <izaak@izaakschwaiger.com>, Marshall Bluestone <marshall@bzhlegal.com>, Denise Carroll1 <denise@izaakschwaiger.com>
Subject: Dane Zeen v. County of Sonoma, et al., Case No. 3:17-cv-02056-LB

Dear Ms. Bonnie,

Attached is a service courtesy copy of "Plaintiff's Motion *In Limine* No. 1" regarding the above-reference case matter. A hard-copy will follow via U.S. Mail.

Sincerely,

Sherry Alhawwash

**Sherry Alhawwash | Legal Secretary**

**SCOTT LAW FIRM**

2

Bonnie A. Hamilton, Esq. (SB 180502)
BLUESTONE ZUNINO & HAMILTON, LLP
50 Old Courthouse Square, Suite 401
Santa Rosa, CA  95402-3729
Telephone:    707-526-4250
Facsimile:    707-526-0347
bonnie@bzhlegal.com

Attorneys for Defendants County of Sonoma, Steve Freitas, Michael Yoder, and Charles Blount

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANE ZEEN, | No.  3:17-cv-02056 LB |
| Plaintiff, | **DECLARATION OF MICHAEL G. SCHOTT IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR ALTERNATIVELY PARTIAL SUMMARY JUDGMENT** |
| v. | |
| COUNTY OF SONOMA, STEVE FREITAS, MICHAEL YODER, CHARLES BLOUNT, and DOES 1-20, inclusive, | |
| Defendants. | Date:        May 24, 2018<br>Time:        9:30 am.<br>Courtroom:   C, 15th Floor |

I, Michael G. Schott, declare:

1.      I am a consultant for the defendants County of Sonoma, Steve Freitas, Michael Yoder and Charles Blount in this matter.  I am the owner of Michael G. Schott Forensic Image Analysis, located in Fort Jones, California.  From 1992 to the present I have served as a licensed private investigator and litigation support consultant, specializing in crime analysis, forensic image analysis and production of photographic and multimedia exhibits. I was retained to review, analyze and process, if possible, the body-worn camera videos of Deputies Michael Yoder and Charles Blount related to the plaintiff Dane Zeen and his detention (W&I Section 5150) on December 15, 2015. Attached hereto as **Exhibit A** is a true and correct copy of my Curriculum Vitae. My training and qualification as an expert witness with respect to forensic image analysis is set forth on Exhibit A at page 3 through 6, and I have qualified in this area in the California Superior and Municipal Courts of Alameda, Contra Costa, Los Angeles, San Francisco, San Mateo, Shasta, Solano, Kern, Yolo and

Sutter Counties; and in the United States District Court (USDC) Eastern District of California, USDC District of Colorado, USDC Eastern District of Washington, USDC Northern District of California. I have been actively engaged in the profession of forensic image analysis for over 25 years. The matters set forth herein are based on my personal knowledge and if called to testify in this matter, I could and would competently testify thereto.

2.    <u>Videos analyzed.</u>  For purposes of this motion, I was provided three Axon Body Videos from counsel for the defendants which I accepted pursuant to the terms of a protective order, a copy of which I acknowledged and agreed to be bound to. The Axon Body Videos are identified as 2015-12-15_0153 (a video with playback duration of about 10 minutes 36 seconds recorded by Deputy Michael Yoder while on scene), 2015-12-15_0159 (a video with playback duration of about 8 minutes 38 seconds recorded by Deputy Charles Blount while on scene) and 2015-12-15_0220 (a video with playback duration of about 10 minutes 52 seconds recorded by Deputy Blount after his arrival at the hospital after the incident and concluding after Zeen's handcuffs are removed in the hospital treatment room). All three videos contain correctly synchronized audio tracks. The three videos are summarized by their principle characteristics as follows:

| ID STAMP | DEPUTY | DURATION | PIXELS/RECORD FRAME RATE |
|---|---|---|---|
| 2015-12-15_0153 | Deputy Yoder | 10 minutes 36 seconds | 640x480; 29.487 frames per second |
| 2015-12-15-0159 | Deputy Blount | 8 minutes 38 seconds | 640x480; 29.520 frames per second |
| 2015-12-15-0220 | Deputy Blount | 10 minutes 52 seconds | 640x480; 29.512 frames per second |

3.    <u>Methodology employed.</u>  The videos taken while Deputies Yoder and Blount were on scene (that is, those of the incident in question) are difficult to see without processing given the extremely low light conditions present at the rural location where the incident took place. There is, however, sufficient data in the videos to reveal at least general human shapes and their respective movements in those places where the low light conditions otherwise make the videos difficult to

view. The methodology I employed on the two videos of the incident (2015-12-15_0153 and 2015-12-15_0159) was to use Photoshop CS2, a well accepted method of digital image processing for this purpose. By shifting the color balance to the green channel I was able to improve the contrast. I applied a noise filter in order to clarify the shapes and to lessen the background of artifacts. Light levels were adjusted to increase luminance. Attached hereto as **Exhibit B** is a true and correct copy of a photo exhibit QUAL-COMP AFN07519 which provides the "before" and "after" view of the process that I implemented.

4.      Synchronized video exhibit of event. I created a split-screen audio/video exhibit in which the on-scene body camera recordings of Yoder and Blount were synchronized by *audio* content, which was more reliable for synchronization purposes than the visual synchronization methods due to the degraded image quality of the videos. The exhibit is easily viewed by the Court with players such as QuickTime Player or VLC Media Player, among others. I refer to AFN, or "absolute frame numbers" in this declaration and in the accompanying exhibits. AFN 1 - 18762 of the Yoder recording were aligned (synchronized) with AFN 1 - 10403 of the Blount recording. Refer to attached audio/video exhibit SYNC VIEW-A.mp4, which is attached as **Exhibit C** hereto. This exhibit begins with Yoder's arrival on scene and concludes with a handcuffed Dane Zeen being placed into Yoder's patrol vehicle for transport to the hospital. For sync images #17960 - 18706 an elapsed time counter for the Blount recording was overlaid at the bottom center of the sync view screen in HH:MM:SS.ms format (which translates to Hour:Minute:Second.millisecond), in order to assist in accurately timing the events in question.

The Yoder camera images appear on the *right side* of the synchronized view. After about 6 minutes 15 seconds, Blount arrives on scene and his camera is activated; the Blount camera images appear on the *left side* of the view. For purposes of reference and clarity, each "page" of the synchronized view is sequentially numbered with a "sync image number" in **white font** at the upper left corner of the split-screen view. (For the remainder of the declaration, these sequential identifiers are referred to as **sync image** numbers.) For sync images #18371 - 18706, (recorded in low light conditions), the above described image processing was applied. Should the court wish to hear the playback of this stereo synchronized exhibit, the Yoder audio plays on the *right* channel, while the

Blount audio plays on the *left* channel.

5.    Other exhibits which assist in analysis.

(a) To aid in a more detailed analysis of the critical period during which Yoder attempts to take Zeen into custody, I excerpted sync images #17960 - 18706 from the "Sync View-A" exhibit and prepared a 10% (3 frames per second) slow motion video segment. This slow motion video segment of the critical period is attached as **Exhibit D** hereto and is referred to as "Slo-Mo-A" exhibit.

(b) I also created a second split-screen view for the metadata time period 00:04:12.100 through 00:04:14.143. The Blount frames on the left side of the screen capture the moments leading up to Yoder's apparent fall. The animated body charts on the right side of the screen illustrate a 270+ degree rotation by Yoder just prior to his falling motion. Playback is set for 3 frames per second slow motion. This short split-screen video exhibit (YODER HEADING-A.mov. [Apple ProRes format]) is attached hereto as **Exhibit E** and is referred to as "Yoder Heading-A" video exhibit.

(c)    Also see attached photo exhibit YODER BODY CHART which is attached hereto as **Exhibit F.**

(d) Also see attached photo exhibit SYNC IMAGE #18015 which is Yoder's chest showing his body camera attached, and the corresponding image of Zeen from Yoder's body camera from the synchronized view.  **(Exhibit G)**

(e)    I have created a forensic chronological time line from the metadata time stamps referenced in the video exhibit Sync View-A in which the audio and video events described are referenced by their sync image numbers and/or their unique time stamps (in the H:M:S:ms metadata time stamps).  The forensic chronology referred to as "Sonoma SO Video Event Timeline"  is attached hereto as **Exhibit H.**

6.    Forensic Analysis of Event:  Upon arrival at the scene Deputy Yoder initially made contact with Tim LaRose at his residence. A short time later Yoder knocked on the window of Zeen's truck to speak with him. Yoder subsequently asked Zeen to step out of the truck so that he could be patted for weapons. After patting him down, Yoder handcuffed Zeen, telling him, "You're not under arrest … I'm going to make sure you get the help you need." Deputy Blount arrived on scene at about this time. Yoder stepped away for further conversation with Tim LaRose.

Several minutes later Yoder returned and advised Zeen that he was being placed on a 72 hour hold. By this time Blount had been on scene for nearly four minutes. After Zeen announced his refusal to submit, each deputy placed a hand on Zeen's left elbow/upper arm. However, as Yoder began to move Zeen toward the patrol car, *Blount released and withdrew his right hand grasp from Zeen's upper left arm.* [See **Exhibit C at sync image** #18323 to #18345.] Blount followed from several feet behind as Yoder moved Zeen toward the patrol car.

At **Exhibit C** sync image #18556 only Yoder's left forearm is visible at extreme image left of the Blount recording. Yoder rotates to his left and out of camera view. Almost immediately (.233 second later), Zeen briefly enters camera view at extreme image left, then similarly rotates left out of camera view. These two individuals are rotating *in tandem*, and in direct proximity to one another. At sync image #18608 Yoder rotates back into image left on the Blount camera. From sync image #18611 forward, Yoder begins a rapid descent while falling backward; he continues to rotate left. When Zeen's face enters image left camera view 1/4 second later at sync image #18618 he is in a tandem descent and rotation with Yoder. Yoder's left hand is in direct proximity to Zeen's left side.

The progression of sync images #18619 - 18623 indicates that Yoder landed on the ground first.

7.    Factual assertions/discussion from the video evidence.  For purposes of my analysis, I compared the video analysis of the incident to the following assertions which I found asserted in either the complaint in this case or the deposition of Timothy Rose, the only non-party witness (and the step-father) of Dane Zeen, both of which I reviewed. I then look to the evidence from the videos to determine if the assertion is supported factually and discuss. I did not ask to see, nor was I provided, the testimony of any of the parties in the case, as I do not believe that the parties' recollections of what did or did not occur have any bearing on my forensic review of the videos themselves.

(A)   **Assertion:** "Deputy Yoder deemed Dane to be a danger to himself, ordered him out of his vehicle, pat searched him for weapons, and detained Dane in handcuffs. At or about this time Sonoma County Deputy Sheriff Charles Blount arrived to assist. With little explanation, the deputies forcibly grabbed Dane and began to lead him to their patrol vehicles." Complaint for

Damages, ¶¶12,13 [3:11-15].

**Discussion:** The deputies did not attempt to take Zeen to the patrol vehicles until *nearly four minutes after* Blount's arrival. (**Exhibit H**, and references therein.) In the interim Yoder discussed the options with Tim LaRose, who agreed (LaRose depo 52:1-14) that Zeen should be transported to a mental health facility. This conversation was held within earshot of Zeen. (LaRose depo 56:2-16)

(B)   **Assertion:** "As the ninety-five pound handcuffed youth began to struggle against the two deputies, Deputy Yoder grabbed him by the arm and took him to the ground causing Dane to land on the driveway face-first and lose consciousness." Complaint for Damages, ¶13 [3:16-15]

**Discussion:** Yoder first places his right hand on Zeen's upper left arm at sync image #18049. It was not until sync image #18611, *19 seconds later*, that Yoder re-enters camera view just prior to falling <u>backward</u> to the ground. Just a few frames later, *about ¼ second*, Zeen re-enters camera view falling forward in the same direction as Yoder. Both are falling in a left hand spiral. The evidence images suggest that Yoder also applied/maintained a left hand grasp on Zeen at some point prior to and during the fall. There are no clear video images of Zeen and Yoder *during the 1.5 seconds* prior to Yoder/Zeen's <u>tandem fall</u>. The video evidence is inconclusive as to the mechanism which triggered a loss of balance by either party.

The video evidence shows that Yoder had less than one second perception-reaction time in which to evaluate and execute any decision as to whether to release or to continue his grasp on Zeen while falling to the ground. (**Exhibit H** and references therein.)

(C)   **Assertion:** "The officer on the left - Dane was pushing back a little with his heels, and basically they picked him up. He was tiptoeing, whatever, and the officer on the left yanked Dane out of the officer's arm on the right (demonstrating), and they both went down to the ground." Deposition of Timothy LaRose, 2-26-2018, at p. 59:8-13. From the deposition testimony, Mr. LaRose identified the "officer on the left" as being Deputy Yoder. (LaRose depo, 60:14-16)

**Discussion:** At sync image #18323 Blount releases and withdraws his right hand from Zeen's left arm *before* Yoder begins walking Zeen past the front bumper of the truck. Blount did not physically assist Yoder in walking Zeen toward the patrol car at that time. By the time of

Yoder/Zeen's fall it had been about 9.724 seconds since Blount had released his grasp on Zeen's left arm.   (**Exhibit H** and references therein)

(D)  **Assertion:** "I see the officer on the inside, the farthest away from me [Yoder], and it basically looked like he still had his arm wrapped around Dane's, twisted, and - what appeared to be - throw Dane on the ground. While that's all happening, he pulled Dane out of the arm of the other officer [Blount]." Deposition of Timothy LaRose, 2-26-2018 p. 64:4-9.

**Discussion:** As stated above, at sync image #18323 Blount releases and withdraws his right hand from Zeen's left arm *before* Yoder begins walking Zeen past the front bumper of the truck. Blount did not physically assist Yoder in walking Zeen toward the patrol car at that time. By the time of Yoder/Zeen's fall it had been about 9.724 seconds since Blount had released his grasp on Zeen's left arm.   (**Exhibit H** and references therein.)

(E)  **Assertion:** Dane hit the ground first, and Deputy Yoder "came down on top of Dane." Deputy Blount also ended up on the ground - "they were rolling in a ball … they were both on top of Dane, basically." Deposition of Timothy LaRose, 2-26-2018, p. 64:24 - 66:2.

**Discussion:**  As noted earlier, the progression of sync images # 18619 - 18623 in **Exhibit C** indicates that Yoder landed on the ground *prior to Zeen*; this image sequence also indicates that the area in which Yoder landed was farther from the Blount camera than the area in which Zeen landed.

(F)  **Assertion:** The second officer, [Blount], "had his knee in his [Dane's] back yelling at me." He was saying, "Stay back." Deposition of Timothy LaRose, 2-26-2018, p. 66:5-16.

**Discussion:**  As seen in **Exhibit C** sync image #18890, Yoder was on his knees and *straddling* Zeen's mid-section for a brief time after the fall. No images show either officer restraining Zeen with a knee to the back. During sync images #19080 - 19362 one or both officers directed Tim

/ / /

/ / /

/ / /

/ / /

LaRose to "get back …. don't come any closer." As previously noted, Deputy Blount was not on the ground with Zeen at any time during or after the fall.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed this 18th day of April, 2018, at Fort Jones, California.

Michael G. Schott

Michael G.
Schott

Digitally signed by Michael G. Schott
DN: cn=Michael G. Schott, o, ou,
email=michaelgschott@gmail.com,
c=US
Date: 2018.04.18 11:42:14 -07'00'

BLUESTONE
ZUNINO
HAMILTON

# Michael G. Schott
### Forensic Image Analysis

PO Box 387
Fort Jones, CA 96032
530.598.5469

michaelschott@
cal.berkeley.edu

April 12, 2018

Bluestone Zunino & Hamilton, LLP
Ms. Bonnie A. Hamilton, Esq.
50 Old Courthouse Square, Suite 401
Santa Rosa, CA  95404

Re:  Dane Zeen v. County of Sonoma, et al.

## Summary Report of Evidence Examination

On February 7, 2018 I received the below listed materials from your office.

USB flash drive containing Sonoma County Sheriff's Office body camera recordings:

- Axon_Body_Video_2015-12-15_0153.mp4:  Yoder Body Camera:  scene
- Axon_Body_Video_2015-12-15_0159.mp4:  Blount Body Camera:  scene
- Axon_Body_Video_2015-12-15_0220.mp4:  Blount Body Camera:  hospital

### Introduction

During the early morning hours of December 15, 2015 deputies Yoder and Blount of the Sonoma County Sheriff's Department attempted to take Dane Zeen into custody in order to transport him to a mental health facility.  Zeen voiced his refusal to submit and resisted Deputy Yoder's efforts to walk him to the patrol car.  Moments later both Zeen and Yoder fell to the ground, with Zeen sustaining apparent facial injuries as a result of the fall.  Although these events were recorded by the body cameras worn by both deputies, the absence of continuous ambient light source(s) degrades much of the detail within certain portions of the video recordings.

Attorney Bonnie A. Hamilton of the law offices of Bluestone Zunino & Hamilton, LLP requested that I process the video images to improve clarity and visibility.  She further requested that I complete an image content analysis with respect to issues in controversy.

**Michael G. Schott**
**Forensic Image Analysis**                                    **page 2**

Scope of Examination

Deputy Yoder's body camera is activated at about 01:53 a.m. as he nears Tim LaRose's
residence.  Deputy Blount's body camera is activated at about 01:59 a.m., upon his arrival at
the truck where Yoder is handcuffing Zeen.  After patting down and handcuffing Zeen, Yoder
steps a short distance away for several minutes to further converse with Tim LaRose.  Yoder
returns to Zeen's location and advises him, "I'm putting you on a 72 hour hold."  The scope of
this analysis generally focuses on the body camera recordings for the 25 second period which
follows.

Technical Characteristics of the Multi-Media Evidence

Axon_Body_Video_2015-12-15_0153.mp4

The recording begins at about the time of Deputy Yoder's arrival on scene, (01:53 a.m.), and
concludes just after Yoder and Zeen fall to the ground.

The playback duration of the recording is about 10 minutes 36 seconds.  The video images
have a resolution of 640 x 480 pixels, and are compressed in the MPEG-4 format at a ratio of
about 125:1.  The recording frame rate is variable, averaging about 29.487 frames per second.
A correctly synchronized audio track is present.

Axon_Body_Video_2015-12-15_0159.mp4

The recording begins at about the time of Deputy Blount's arrival on scene, (01:59 a.m.), and
concludes after Blount leaves the scene and is driving en route to the hospital.

The playback duration of the recording is about 8 minutes 38 seconds.  The video images
have a resolution of 640 x 480 pixels, and are compressed in the MPEG-4 format at a ratio of
about 135:1.  The recording frame rate is variable, averaging about 29.520 frames per second.
A correctly synchronized audio track is present.

Axon_Body_Video_2015-12-15_0220.mp4

The recording begins at about the time of Deputy Blount's arrival at the hospital (02:20 a.m.),
and concludes after Zeen's handcuffs are removed in the treatment room.

The playback duration of the recording is about 10 minutes 52 seconds.  The video images
have a resolution of 640 x 480 pixels, and are compressed in the MPEG-4 format at a ratio of

**Michael G. Schott**
**Forensic Image Analysis**                                    **page 3**

about 118:1.  The recording frame rate is variable, averaging about 29.512 frames per second.  A correctly synchronized audio track is present.

<u>Image Processing Methodology</u>

Some of the video images were recorded in extreme low light conditions.   However, there was sufficient data present to reveal at least general human shapes and movements.  Using Photoshop CS2 I shifted the color balance to the green channel in order to improve contrast.  I also applied a noise filter in order to clarify the shapes and to lessen the background artifacts.  Light levels were adjusted to increase luminance.  [Refer to attached photo exhibit QUAL-COMP AFN07519 for a before/after view of this process.]

<u>Production of Video Segment Exhibits</u>

I created a split-screen audio/video exhibit in which the on-scene body camera recordings of Yoder and Blount were synchronized by audio content.  [The degraded image quality was not conducive to visual synchronization methods.]  AFN (absolute frame numbers) 1 – 18762 of the Yoder recording were aligned with AFN 1 – 10403 of the Blount recording.   This exhibit begins with Yoder's arrival on scene and concludes with a handcuffed Dane Zeen being placed into Yoder's patrol vehicle for transport to the hospital.

The Yoder camera images appear on the right side of the synchronized view.  After about 6 minutes 15 seconds Blount arrives on scene and his camera is activated; the Blount camera images appear on the left side of the view[1].  For purposes of reference and clarity, each "page" of the synchronized view is sequentially numbered with a "sync image number" in white font at the upper left corner of the split-screen view.  For sync images #18371 – 18706, (recorded in low light conditions), the above described image processing was applied.

During playback of this stereo synchronized exhibit[2] the Blount audio plays on the left channel, while the Yoder audio plays on the right.

Due to the variable frame rate recordings involved, it was necessary to manually obtain actual frame per second counts from the metadata of the file(s) involved in order to accurately time the critical events.  I completed the frame counts on the Blount recording for sync images #17960 – 18706.  The resultant elapsed time counter was labeled "METADATA TIMER" and was overlaid at the bottom center of the sync view screen in HH:MM:SS.ms format.[3]

Refer to attached audio/video exhibit SYNC VIEW-A.mp4.  [MPEG-4 format.]

---

[1] For example, at sync image #18015, [attached],  Blount's camera image on the left shows Yoder reaching for Zeen with his right hand; Yoder's body camera is seen on his chest.  The synced view captured by Yoder's camera appears on the right.
[2] Attached video exhibits may be viewed with players such as QuickTime Player or VLC Media Player, among others.
[3] Hour:Minute:Second.millisecond

**Michael G. Schott**
**Forensic Image Analysis**                                              **page 4**

To aid in a more detailed analysis of the critical period during which Yoder attempts to take Zeen into custody, I excerpted sync images #17960 – 18706 from the Sync View-A exhibit and prepared a 10% (3 frames per second) slow motion video segment.  (No audio tracks present.) Refer to attached video exhibit 10% SLO-MO-A.mov.  [Apple ProRes format.]

I also created a second split-screen view for the metadata time period 00:04:12.100 through 00:04:14.143.  The Blount frames on the left side of the screen capture the moments leading up to Yoder's apparent fall.  The animated body charts on the right side of the screen illustrate a 270+ degree rotation by Yoder just prior to his falling motion.  Playback is set for 3 frames per second slow motion.  Refer to attached video exhibit YODER HEADING-A.mov.  [Apple ProRes format.]  Also see attached photo exhibit YODER BODY CHART.

<u>Issues/Assertions</u>

1.  Assertion:  "Deputy Yoder deemed Dane to be a danger to himself, ordered him out of his vehicle, pat searched him for weapons, and detained Dane in handcuffs.  At or about this time Sonoma County Deputy Sheriff Charles Blount arrived to assist.  With little explanation, the deputies forcibly grabbed Dane and began to lead him to their patrol vehicles."[4]

2.  Assertion:  "As the ninety-five pound handcuffed youth began to struggle against the two deputies, Deputy Yoder grabbed him by the arm and took him to the ground causing Dane to land on the driveway face-first and lose consciousness."[5]

3.  Assertion:  "The officer on the left –Dane was pushing back a little with his heels, and basically they picked him up.  He was tiptoeing, whatever, and the officer on the left yanked Dane out of the officer's arm on the right (demonstrating), and they both went down to the ground."[6]

4.  Assertion:  "I see the officer on the inside, the farthest away from me, and it basically looked like he still had his arm wrapped around Dane's, twisted, and – what appeared to be – throw Dane on the ground.  While that's all happening, he pulled Dane out of the arm of the other officer."[7]

5.  Assertion:  Dane hit the ground first, and Deputy Yoder "came down on top of Dane." Deputy Blount also ended up on the ground – "they were rolling in a ball ... they were both on top of Dane, basically."[8]

---

[4] Complaint for Damages, ¶12,13, [3:11-15].
[5] Complaint for Damages, ¶13, [3:16-15].
[6] Deposition of Timothy LaRose, 2-26-2018, [59:8-13]
[7] Deposition of Timothy LaRose, 2-26-2018, [64:4-9]
[8] Deposition of Timothy LaRose, 2-26-2018, [64:24 – 66:2]

**Michael G. Schott**
**Forensic Image Analysis**                                    **page 5**

6. Assertion:  The second officer, [Blount], "had his knee in his [Dane's] back yelling at me."  He was saying, "Stay back."[9]

<u>Analytic Chronology</u>

In this discussion audio/video events are referenced by sync image numbers and/or their unique H:M:S.ms metadata time stamps referenced in the video exhibit SYNC VIEW-A.[10]

Upon arrival at the scene Deputy Yoder initially made contact with Tim LaRose at his residence.  A short time later Yoder knocked on the window of Zeen's truck to speak with him.  Yoder subsequently asked Zeen to step out of the truck so that he could be patted for weapons.  After patting him down, Yoder handcuffed Zeen, telling him, "You're not under arrest … I'm going to make sure you get the help you need."  Deputy Blount arrived on scene at about this time.  Yoder stepped away for further conversation with Tim LaRose.

Several minutes later Yoder returned and advised Zeen that he was being placed on a 72 hour [mental health] hold.  By this time Blount had been on scene for nearly four minutes.  After Zeen announced his refusal to submit, each deputy placed a hand on Zeen's left elbow/upper arm.

As Yoder began to move Zeen toward the patrol car, Blount released and withdrew his right hand grasp from Zeen's upper left arm.  [sync image #18323 at 00:04:04.276.]  Blount followed from several feet behind as Yoder moved Zeen toward the patrol car.

At sync image #18556 only Yoder's left forearm is visible at extreme image left of the Blount recording.  Yoder rotates to his left and out of camera view.  Almost immediately, (.233 second later), Zeen briefly enters camera view at extreme image left, then similarly rotates left out of camera view.  These two individuals are rotating in tandem, and in direct proximity to one another.

At sync image #18608 Yoder rotates back into image left on the Blount camera.  From sync image # 18611 forward Yoder begins a rapid descent while falling backward; he continues to rotate left.  When Zeen's face enters image left camera view 1/4 second later at sync image #18618 he is in a tandem descent and rotation with Yoder.  Yoder's left hand is in direct proximity to Zeen's left side.

The progression of sync images # 18619 – 18623 indicates that Yoder landed on the ground first.

---

[9] Deposition of Timothy LaRose, 2-26-2018, [66:5-16]
[10] Refer to attached document "Sonoma SO Video Event Timeline (ref. 3-15-2018)"

**Michael G. Schott**
**Forensic Image Analysis**                    page 6

Discussion and Conclusions

1. Assertion: "Deputy Yoder deemed Dane to be a danger to himself, ordered him out of his vehicle, pat searched him for weapons, and detained Dane in handcuffs. At or about this time Sonoma County Deputy Sheriff Charles Blount arrived to assist. With little explanation, the deputies forcibly grabbed Dane and began to lead him to their patrol vehicles."

Discussion: The deputies did not attempt to take Zeen to the patrol vehicles until nearly four minutes after Blount's arrival. In the interim Yoder discussed the options with Tim LaRose, who agreed[11] that Zeen should be transported to a mental health facility. This conversation was held within earshot of Zeen.[12]

2. Assertion: "As the ninety-five pound handcuffed youth began to struggle against the two deputies, Deputy Yoder grabbed him by the arm and took him to the ground causing Dane to land on the driveway face-first and lose consciousness."

Discussion: Yoder first places his right hand on Zeen's upper left arm at sync image #18049. It was not until sync image #18611, 19 seconds later, that Yoder re-enters camera view just prior to falling backward to the ground. Just a few frames later, about ¼ second, Zeen re-enters camera view falling forward in the same direction as Yoder. Both are falling in a left hand spiral. The evidence images suggest that Yoder also applied/maintained a left hand grasp on Zeen at some point prior to and during the fall. *There are no clear video images of Zeen and Yoder during the 1.5 seconds prior to Yoder/Zeen's tandem fall.* The video evidence is inconclusive as to the mechanism which triggered a loss of balance by either party.

The video evidence shows that Yoder had less than one second perception-reaction time in which to evaluate and execute any decision as to whether to release or to continue his grasp on Zeen while falling to the ground.[13]

3. Assertion: "The officer on the left –Dane was pushing back a little with his heels, and basically they picked him up. He was tiptoeing, whatever, and the officer on the left yanked Dane out of the officer's arm on the right (demonstrating), and they both went down to the ground."

Discussion: At sync image #18323 Blount releases and withdraws his right hand from Zeen's

---

[11] Deposition of Timothy LaRose, 2-26-2018, [52:1-14]
[12] Deposition of Timothy LaRose, 2-26-2018, [56:2-16]
[13] Sync image #18611 to #18638 time elapsed = 0.964 second.

**Michael G. Schott**
**Forensic Image Analysis**                              page 7

left arm before Yoder begins walking Zeen past the front bumper of the truck.  Blount did not physically assist Yoder in walking Zeen toward the patrol car at that time.  By the time of Yoder/Zeen's fall it had been about 9.724 seconds since Blount had released his grasp on Zeen's left arm.

4. Assertion:  "I see the officer[14] on the inside, the farthest away from me, and it basically looked like he still had his arm wrapped around Dane's, twisted, and – what appeared to be – throw Dane on the ground.  While that's all happening, he pulled Dane out of the arm of the other officer[15]."

Discussion:  Same as for previous assertion.

5. Assertion:  Dane hit the ground first, and Deputy Yoder "came down on top of Dane."  Deputy Blount also ended up on the ground – "they were rolling in a ball … they were both on top of Dane, basically."

Discussion:  As noted earlier, the progression of sync images # 18619 – 18623 indicates that Yoder landed on the ground prior to Zeen; this image sequence also indicates that the area in which Yoder landed was farther from the Blount camera than the area in which Zeen landed.

During the time that Yoder and Zeen rotated and eventually fell to the ground, the general vertical orientation of Blount's body camera relative to the lights of the parked patrol car(s) remains essentially unchanged;  [e.g. sync image #18655].  Accordingly, it can be demonstrated that Blount did not go to the ground during or after Yoder/Zeen's fall.  Neither officer landed on Zeen, and at no time were both officers on top of Zeen.

6. Assertion:  The second officer, [Blount], "had his knee in his [Dane's] back yelling at me."  He was saying, "Stay back."

Discussion:  As seen in sync image #18890, Yoder was on his knees and straddling Zeen's mid-section for a brief time after the fall.  No images show either officer restraining  Zeen with a knee to the back.  During sync images #19080 – 19362 one or both officers directed Tim LaRose to "get back …. don't come any closer."  As previously noted, Deputy Blount was not on the ground with Zeen at any time during or after the fall.

---

[14] Deputy Yoder.
[15] Deputy Blount.

**Michael G. Schott**
**Forensic Image Analysis**                              page 8

<u>Attachments</u>

- Print Photo Exhibits (8 x 10"):        QUAL-COMP AFN07519
                                         YODER BODY CHART
                                         AXON-220 CLOCK

- Print Documents:                       CV of Michael G. Schott
                                         Fee Schedule
                                         Summary Report of Evidence Examination
                                         Sonoma SO Video Event Timeline

- <u>USB Flash Drive</u>

    Photo Exhibits:                      QUAL-COMP AFN07519
                                         YODER BODY CHART
                                         AXON-220 CLOCK
                                         SYNC IMAGE #18015

    Video Exhibits:                      SYNC VIEW-A
                                         10% SLO-MO-A
                                         YODER HEADING-A

    Text Documents:                      CV of Michael G. Schott
                                         Fee Schedule
                                         Summary Report of Evidence Examination
                                         Sonoma SO Video Event Timeline
                                         Complaint for Damages
                                         2018 02-26 LaRose Deposition

    Multi-Media Evidence                 Axon_Body_Video_2015-12-15_0153.mp4
    Received for Examination             Axon_Body_Video_2015-12-15_0159.mp4
    on 2-7-2018                          Axon_Body_Video_2015-12-15_0220.mp4

Michael G. Schott                        April 12, 2018

**PROOF OF SERVICE**

I am employed in Sonoma County, California.  I am over the age of 18 years and not a party to the within action.  My business address is 50 Old Courthouse Square, Suite 401, Santa Rosa, CA 95404.

On **July 10, 2018**, I served the following document(s):

DECLARATION OF BONNIE A. HAMILTON IN OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE NO. 1 TO EXCLUDE THE TESTIMONY OF DEFENDANT'S EXPERT MICHAEL SCHOTT

by placing a true copy thereof enclosed is a sealed envelope and/or served in the manner described below and addressed to:

| **Attorneys for Plaintiff Dane Zeen:** | **Attorneys for Plaintiff Dane Zeen:** |
|---|---|
| John Houston Scott, Esq. | Izaak D. Schwaiger, Esq. |
| Lizabeth N. de Vries, Esq. | 130 Petaluma Avenue, Suite 1A |
| Scott Law Firm | Sebastopol, CA 95472 |
| 1388 Sutter Street, Suite 715 | Tele: (707) 595-4414 |
| San Francisco, CA 94109 | Fax: (707) 851-1983 |
| Tel: (415) 561 -9601 | E-mail: izaak@izaakschwaiger.com |
| Fax: (415) 561-9609 | |
| E-mail:    john@scottlawfirm.net | |
|              liza@scottlawfirm.net | |

XX    **BY U.S. MAIL:**  I caused such envelope to be deposited in the mail by placing the envelope for collection and mailing following our ordinary business practices.  I am readily familiar with this business' practice for collecting and processing correspondence for mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully prepaid.  The name and address of each person/firm to whom I mailed the documents is listed above.

___    **BY HAND DELIVERY:**  I cau sed such envelope to be delivered by hand to the addressee(s) designated above.

___    **BY OVERNIGHT COURIER SERVICE:**  I caused such envelope to be delivered via overnight courier services to the addressee(s) designated above.

XX    **BY E-MAIL:** I transmitted electronically the listed documents(s) to the e-mail address(es) set forth on the attached list.

XX    **FEDERAL:** I declare that I am employed in the office of a member of the bar of this court at whose direct this service was made.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on July 10, 2018, at Santa Rosa, California.

Tracy Kecskemeti

**PROOF OF SERVICE**