UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| DANE ZEEN,<br><br>   Plaintiff,<br><br>  v.<br><br>COUNTY OF SONOMA, et al.,<br><br>   Defendants. | Case No. 17-cv-02056-LB<br><br>**FINAL PRETRIAL ORDER** |

The Court held a final pretrial conference on August 2, 2018. The court adopts the following pretrial order pursuant to Federal Rule of Civil Procedure 16(e).

### 1. Trial Date and Length of Trial

A. The jury trial will begin on August 20, 2018, in Courtroom C, 15th Floor, U.S. District Court, 450 Golden Gate Avenue, San Francisco, California. The trial will last up to four days (but the court expects that it probably will take three days). The trial will be held Monday through Wednesday (and possibly part of Thursday) Friday from 8:30 a.m. to approximately 1:30 or 2:00 p.m. (or slightly longer to finish a witness) and will include two fifteen-minute breaks. Counsel must arrive at 8:15 a.m. to address any issues (such as objections) before the trial day begins. Once the jury begins deliberations, it usually stays past 2:00 p.m. Also, Monday may run the full

1 day and will include jury selection, opening statements, and two or three witnesses, as the day permits.

B. Each side will have 8 hours to present the direct examination of its witnesses and to cross-examine the opposing party's witnesses, including all objections raised during the trial day. In addition, each party may make an opening statement of up to 30 minutes.

## 2. Procedures During Trial; Exhibit and Witness Lists; Witnesses

The parties should refer to the court's September 25, 2017 Pretrial Order[1] for the court's procedures regarding the presentation of exhibits, depositions, and witness testimony during trial. In particular, the court reminds the parties of its procedures for using deposition excerpts.[2]

The parties will call the witnesses on their separate witness lists. As discussed at the pretrial conference, if the parties identify the same witnesses, the defendant will examine the witnesses when the plaintiff calls them (as opposed to recalling them).

## 3. Claims, Defenses, and Relief Sought

### 3.1 Plaintiff's claims

The plaintiff claims that he was subjected to excessive force in violation of the Fourth Amendment after being handcuffed and taken into custody for psychiatric evaluation by defendant Yoder.

### 3.2 Defendant's defenses

Defendant Yoder denies this claim and denies that the plaintiff's injuries were caused by a deprivation of the plaintiff's constitutional rights. Defendant Yoder also seeks qualified immunity.

### 3.3 Relief sought

The plaintiff seeks general, compensatory, and punitive damages against defendant Yoder. Should he prevail, the plaintiff also seeks costs and attorney's fees.

---

[1] Case Mgmt. and Pretrial Order – ECF No. 25.

[2] *Id.* at 7.

### 4. Stipulated (Undisputed) Facts

Defendant Yoder was on duty and was acting under color of state law at the time of the incident. The parties must prepare the appropriate stipulation to read to the jury and admit as evidence.

### 5. Disputed Facts

1. Whether defendant Yoder used excessive force in violation of the Fourth Amendment.
2. If so, whether defendant Yoder's conduct caused damages to the plaintiff.
3. If so, whether defendant Yoder's conduct that harmed the plaintiff was malicious, oppressive, or in reckless disregard of the plaintiff's rights.

### 6. Disputed Legal Issues for Resolution by the Court

1. Whether defendant Yoder is entitled to qualified immunity for any violation of the plaintiff's federal constitutional right.

### 7. Motions in Limine

For the reasons stated on the record and below, on the parties' specific motions in limine, the court rules as follows:

**Plaintiff's Motion in Limine 1: Expert Witness Michael Schott**

The plaintiff moves to exclude the testimony of the defendant's expert Michael Schott. The motion is granted in part, as discussed on the record and set forth below.

Mr. Schott is a forensic-imaging expert who analyzed the video footage from the body cameras worn by the defendant and Deputy Charles Blount during the incident. Among other things, Mr. Schott compiled videos that synchronized the defendant's and Deputy Blount's footage and placed them side by side, slowed down the footage, and shifted the color balance of the footage to the green channel to improve contrast. Mr. Schott also offers opinions as to what the video footage shows and what the plaintiff, the defendant, and Deputy Yoder were doing. Mr. Schott was unable to opine on what caused the plaintiff and defendant to fall, however, attesting

1  that "[t]he video evidence is inconclusive as to the mechanism which triggered a loss of balance
2  by either party."[3]

The plaintiff first argues that Mr. Schott should be excluded because the defendant failed to provide a Rule 26 report in his June 7, 2018 disclosure. The defendant's counsel responds that she had meant to send Mr. Schott's report to the plaintiff on June 7, but her office inadvertently attached only Mr. Schott's CV, instead of his report. Counsel states that the plaintiff did not inform her of the wrong attachment at the time, or at any point prior to filing his motion in limine. Once counsel received the plaintiff's motion in limine, she sent him a copy of Mr. Schott's report the next business day. Additionally, counsel states that Mr. Schott's report was previously attached to her motion for summary judgment on April 19, and Mr. Schott has expressed no new opinions since then, so the plaintiff has had the entirety of Mr. Schott's opinions since April and therefore suffered no prejudice from the mishap in June. The court agrees that this argument of the plaintiff's argument is not a basis for excluding Mr. Schott.

The plaintiff next argues that Mr. Schott's opinions as to what the video footage shows, and what actually occurred during the incident, are improper speculation and do not meet the *Daubert* standard for reliability and trustworthiness. The court agrees. Mr. Schott may testify about how he enhanced the video footage. He may not testify, however, about what he believes the video footage shows, much less what he believes actually occurred during the incident. *Cf. Lam v. City of San Jose*, No. 14-cv-00877-PSG, 2015 WL 6954967, at *2 (N.D. Cal. Nov. 10, 2015) ("[Forensic audio/video expert] may explain how he enhanced the audio and play the enhanced audio to the jury. . . . However, he may not testify as to what he believes [defendant] said [on the recording]."); *Lee v. Anderson*, 616 F.3d 803, 808–09 (8th Cir. 2010) (affirming trial court's ruling that video expert could testify about how he modified the video but not that the video showed that plaintiff did not have a gun, because "the jury was entirely capable of analyzing the

---

[3] Schott Decl. – ECF No. 76 at 48 (¶ 7(B)).

images and determining whether [plaintiff] had anything in his hands," and the expert's opinion "would not have assisted the jury but rather would have told it what result to reach").

In sum, the video "SYNC VIEW-A" attached as Exhibit C to Mr. Schott's April 18, 2018 report and the video "Slo-Mo-A" attached as Exhibit D to Mr. Schott's report, and still-frame excerpts thereof, are admissible and may be shown to the jury. The court suggested that the parties craft a stipulation to be read to the jury to explain how the videos were derived from the raw footage from the officers' body cameras. That would obviate the need for Mr. Schott's testimony about the technical aspects of the video editing. The court also appreciates that the defendant may want to give some life to the video through Mr. Schott's testimony. The court thinks that a stipulation still would be helpful to move things along. It also can be admitted as an exhibit.

**Defendant's Motion in Limine 1: Exclusion of Evidence Not Identified**

The defendant moves to exclude evidence of medical expenses that the plaintiff did not provide in discovery or through initial disclosures. The motion is granted for the reasons stated on the record. The plaintiff said that he would not put in any evidence of his expenses for medical expenses, mainly because he did not incur any.

**Defendant's Motion in Limine 2: Expert Witness Roger Clark**

The defendant moves to exclude the testimony of the plaintiff's expert Roger Clark. The court grants the motion in part and denies it in part.

Experts may not testify as to ultimate issues of law. While expert testimony is not objectionable just because it embraces an ultimate issue, *see* Fed. R. Evid. 704(a), "an expert witness cannot give an opinion as to her *legal conclusion*, i.e., an opinion on an ultimate issue of law." *United States v. Diaz*, 876 F.3d 1194, 1197 (9th Cir. 2017) (emphasis in original) (citing *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004)).

As he expresses them in his report, Mr. Clark's opinions are legal conclusions on ultimate issues of law. Mr. Clark may testify — to the extent that his opinions are fairly subsumed in his report and are based on sufficient facts or data — about police procedures or what a hypothetical

reasonable officer might have done.[4] *See Bui v. City and Cty. of San Francisco*, No. 11-cv-04189-LB, 2018 WL 1057787, at *10 (N.D. Cal. Feb. 27, 2018) ("an expert may address hypothetical situations (such as what a police officer might do in a given situation)"). But Mr. Clark may not testify about conclusions such as:

- "In my opinion Deputy Yoder's use of force was a clear and extreme example of the excessive force which no responsible agency could condone."[5]
- "Rather, his response and use of force appears in this incident as grossly unjustified, excessive and unnecessary in the totality of the circumstances confronting him, and includes his collective failure to abide by POST standards, and law (as taught by POST)."[6]
- "Deputy Yoder's use of force in this set of facts was exceptionally reckless and beyond the plaintiff's ability to control or mitigate, especially given his small size and the fact that he was handcuffed behind his back."[7]

These are opinions on ultimate issues of law. *Cf. Bui*, 2018 WL 1057787, at *9.

**Defendant's Motion in Limine 3: Amounts Billed to Mr. Zeen's Parents**

This motion is unopposed, and the court grants it.

**Defendant's Motion in Limine 4: Claims Not Involving the Plaintiff**

This motion is unopposed, and the court grants it, except to the extent that the plaintiff seeks to introduce such evidence for impeachment or rebuttal. The issue will arise only through the defendant's examination of Deputy Yoder. Before impeaching with other evidence, the plaintiff must vet the issue with the court and counsel outside of the presence of the jury.

**Defendant's Motion in Limine 5: Insurance**

This motion is unopposed, and the court grants it.

---

[4] Mr. Clark cannot offer opinions not disclosed in his report.

[5] Clark Rule 26 Report – ECF No. 72 at 20 (¶ 1).

[6] *Id.* (¶ 2).

[7] *Id.* at 21 (¶ 3).

**8. Objections to Exhibits**

**Plaintiff's objections to defendant's exhibits:**

- Ex. 101 (police incident report) on grounds of hearsay and Rule 403: The attached 5150 report is admissible as a public record, the photograph is admissible, and the police report itself — the parties agreed — may be used to refresh recollection or as past recollection recorded, if appropriate. (There are other possible uses but generally the defendant wants to use the 5150 form and the photograph).

- Ex. 104 (Mr. Zeen's psychiatric emergency services records from 12/15–12/17/2015 after the incident): The defendant will not contest the 5150 placement. The parties will craft an appropriate stipulation. Based on that agreement, the court excludes the records because they are not relevant to whether Deputy Yoder used excessive force or accidentally fell.

- Ex. 106 (Schott expert report) on grounds of hearsay and Rule 403: The court resolved this issue by ruling on the plaintiff's MIL 1.

- Ex. 108 (use-of-force policy) on grounds of hearsay, Rule 403, and relevance: The court denies the objection. It is not hearsay because it is not offered for the truth of the matter asserted in it, it is a statement of operative legal fact, and it is a public record. Questions about whether this is the actual de facto policy go to weight, not admissibility.

**Defendant's objections to plaintiff's exhibits:**

- Ex. 1–2 (transcript of body camera footage; defendant does not object to the footage itself): The parties agreed that a transcript of the incident itself (as a juror aid) would be helpful here, and the defendant will sync a transcript to the exhibit. The parties will confer to avoid any issues. The court will read the standard instruction to the jury before the parties play the video.

- Ex. 3 (video of officers' conversation at hospital after incident) on the grounds of Rule 403, and also the transcript for the same reason): For the reasons discussed on the record, the court denies the objection to the extent that the defendant seeks to exclude the video itself. The conversation between the officers can go to their assessment of what happened. The parties can argue whatever they want from that conversation — the defendant can

1  argue that it is of limited relevance, and the plaintiff can argue the converse. The video is not prejudicial within the meaning of Rule 403 (i.e., it is not inflammatory, and it does not create a sideshow). The plaintiff agreed that he would not use a transcript.

- Ex. 12–13: The parties will confer on photographs and diagrams that will be exhibits and any demonstrative exhibits by the close of business next Thursday, August 16, 2018.

From the parties' submission of joint exhibits and their identifying any objections, the court assumes that there will not be issues regarding authenticity or custodians. The court expects parties generally to work out these issues to streamline the trial as much as possible.

## 9. Jury Instructions

The parties dispute whether the plaintiff's proving that punitive damages should be awarded in an excessive-force case brought under 42 U.S.C. § 1983 is subject to a preponderance-of-the-evidence standard or a clear-and-convincing-evidence standard. It is the former. *See, e.g.*, *Dang v. Cross*, 422 F.3d 800, 808–09 (9th Cir. 2005); *Weishaar v. County of Napa*, No. 14-cv-01352-LB, 2016 WL 7242122, at *14 (N.D. Cal. Dec. 15, 2016).

## 10. Trial

At the end of each trial day (generally, by 2:00 p.m.), counsel must give notice of the order of proof (meaning, the order of witnesses and the exhibits, including illustrative exhibits) for the next trial day. The parties must notify the court of any issues by the end of the day so that the court can resolve them. To the extent that the parties will call hostile witnesses, which means that the opposing party's "cross-examination" will be its direct examination, counsel must provide a list of all exhibits to be used with the same witness on cross-examination (other than for impeachment). The parties will call their joint witnesses only once (which means that those witnesses will be called during the plaintiff's case).

**IT IS SO ORDERED.**

Dated: August 9, 2018

_____
LAUREL BEELER
United States Magistrate Judge